RITA A. CACCAVALE[1] vs. RAYMARK INDUSTRIES, INC.

Middlesex. October 6, 1988. — February 13, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Negligence*, Manufacturer. *Warranty. Practice, Civil*, Instructions to jury, Verdict, Special questions to jury.

Where the jury's answers to special questions in a case against a manufacturer of asbestos products, stating that the defendant was negligent but not in breach of warranty, were inconsistent as matter of law, and where the judge did not then return the jury for further deliberations with additional instructions, the case was remanded for a new trial on all issues. [97-99] LIACOS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on January 25, 1979.

The case was tried before *Thomas R. Morse, Jr.,* J., and the issue of damages was retried before *James P. Lynch, Jr.,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard L. Neumeier* (*Thomas P. O'Reilly, Leonard F. Zandrow, Jr., & Janet L. Maloof* with him) for the defendant.

*Albert P. Zabin* for the plaintiff.

HENNESSEY, C.J. The plaintiff in this product liability case sued sixteen asbestos products manufacturers for damages arising from the wrongful death of her husband, Joseph N. Caccavale, from asbestos related diseases. Prior to trial, the plaintiff either dismissed or settled her claims against all of the defendants except Raymark Industries, Inc.

At trial, a Superior Court judge submitted the case to a jury on special questions. The jury found the defendant negligent, but found no breach of warranty, and awarded the plaintiff $170,000 in damages.

---

[1] Individually and as administratrix of the estate of Joseph N. Caccavale.

The plaintiff moved for a new trial on the issue of damages alone. The defendant opposed this motion and moved for a new trial on all issues. The judge granted the plaintiff's motion. At retrial on the damages issue, the jury returned a judgment of $637,999.90 against the defendant. In light of our conclusions in this case, this retrial is a nullity.

The defendant appealed the judge's refusal to grant a mistrial, his refusal to grant a new trial on all issues, and his refusal to send the jury back for further deliberations, as well as the interest rate the judge applied to the damages. The plaintiff cross appealed on the interest rate issue. We allowed the defendant's application for direct appellate review.

The following synopsis chronicles the relevant trial proceedings. It also illustrates the complexity of the case, as well as the confusion under which the jury labored.

After all the evidence had been presented, the judge instructed the jury on many issues, including negligence and warranty law, and submitted the case to the jury on special questions:

I. Was the defendant negligent?

II. If you answered No. 1 in the affirmative, did defendant's negligence contribute to causing Joseph Caccavale's death?

III. Was there a breach of warranty by the defendant? If your answer to No. 3 is 'No' do not go any further. If your answer to No. 3 is 'Yes' go on to No. 4.

IV. If you answered No. 3 in the affirmative, did defendant's breach of warranty contribute to Joseph Caccavale's death?

V. Was the defendant grossly negligent?

VI. What sum do you award as compensation for the loss suffered by:

    A. Mrs. Rita Caccavale, widow and administratrix:

        1. Conscious pain and suffering.

        2. Loss of consortium.

        3. Damage to earning capacity of Joseph Caccavale during his life.

        4. Reasonable medical bills and expenses;

    B. Mrs. Rita Caccavale for the death of Joseph Caccavale;

      C. Mary Caccavale for the death of Joseph Caccavale;

      D. Carol Ferris for the death of Joseph Caccavale;

 VII.  If you answered Question No. 5 'yes' what amount do you assess against the defendant for punitive damages? (not less than $5,000).

After deliberating for two hours, the jury asked two questions: "Could you tell, Judge, in written form, or [define] for the jury the word negligence as you read it to us in court today?" and, "Was the Massachusetts law that the Judge mentioned today regarding corporate responsibility for warnings in effect in 1939 to 1944?" The judge gave the jury a copy of his charge on negligence and instructed the jury that the law in 1939 to 1944 was the same as that at the time of trial.

Later during deliberations, the jury asked the court: "May we have the transcript re: judge's comments on breach of warranty?" The judge reinstructed the jury on warranty liability, and gave the jury a transcript of the instruction and a written supplement. Included in the instructions was the statement that the jury had to answer "yes" to the breach of warranty questions if they answered "yes" to the negligence questions.[2] Approximately two hours later, the jury returned with another question: "Why did the Judge stipulate that Questions 3 & 4 [breach of warranty] must be answered 'yes' if Questions 1 & 2 [negligence] are answered 'yes?' Our 'special question' sheet seems to indicate that a positive response to 1 & 2 still provides room for a 'no' response for #3. (We are deadlocked on Question #2.)" The judge instructed the jury that the breach of warranty question was independent of the negligence question, stating that they were two different theories of liability.[3]

---

[2] The defendant suggests that an additional instruction discussed at an unrecorded conference was erroneously submitted to the jury and was the source of the jury's confusion.

[3] Under *Hayes* v. *Ariens Co.*, 391 Mass. 407 (1984), the jury had to conclude that there had been a breach of warranty if they concluded there had been negligence. The judge did not contradict the original correct instruction regarding the consistency of the verdicts. He answered the jury's question, stating: "Question 3 dealing with the breach of warranty doesn't depend at all on how you have dealt with Questions 1 and 2. It may be that the defendant was negligent and also that there was a breach of warranty

`About fifteen minutes later, the jury returned with a verdict. The jury found negligence, and a casual relationship, but not a breach of warranty. The judge explained to the jury that their verdict was incomplete, because the jury did not answer the gross negligence and damages questions. Defense counsel requested that the jury be instructed that the verdict remained open, and that all issues were open until the final decision was made. The plaintiff's counsel offered to voluntarily dismiss the breach of warranty count, and argued that the jury did not understand the breach of warranty issue. The judge and counsel decided to write supplemental instructions to correct the jury's confusion.

At the beginning of the next court day, defense counsel filed a motion for a mistrial on numerous grounds, including the inconsistent answers returned by the jury to special questions. Defense counsel also filed, in the alternative, a motion to return the jury for further deliberations. At a bench conference that morning, the judge and counsel discussed the jury's incomplete verdicts and the various courses to resolve the problem. Defense counsel stated that "the jury is terribly confused," and that "there is total confusion in that jury room." Defense counsel stressed that "with respect to the finding of negligence and the finding of no breach of warranty, . . . they're hopelessly inconsistent." The judge then reinstructed the jury, stating, with reference to their answers to the special question: "It may be consistent with your view of the evidence. It may not be consistent with your view of the evidence. I'm not asking for you [to] change your verdict if everyone is on the same frequency."

A few hours later the jury returned with verdicts. The jury found negligence, and found that the defendant's negligence contributed to the cause of Joseph Caccavale's death, but found neither a breach of warranty nor gross negligence. The jury awarded $18,500 for conscious pain and suffering, $18,500 for loss of consortium, $100,000 for damage to Joseph Cac-

---

by the defendant. It is also possible that the defendant was not negligent and there could still be a finding of breach of warranty because these are two different theories of liability." See *Hayes* v. *Ariens Co.*, *supra* at 410, and see the discussion of that case, *infra,* in this opinion.

cavale's earning capacity during his lifetime, $13,000 in reasonable medical bills, $20,000 to Rita Caccavale for the death of Joseph Caccavale, no damages to the daughters of Joseph Caccavale, and no punitive damages. The judge thanked the jurors for their service and excused them. Defense counsel moved that the jury not be excused and that they return to their deliberations with instructions on the net earning capacity issue. The judge stated: "We are not going to take this hardworking jury back now to report further. I couldn't do it if I wanted to. The verdict has been recorded. If there is to be a new trial, you may make a motion." Defense counsel renewed the defendant's motion for a mistrial based on the inconsistent verdicts. The judge denied the motion.

The plaintiff moved for a new trial on damages alone. The defendant opposed the motion and moved for a new trial on all the issues. The judge ordered a new trial on the issue of damages, excepting the damages sustained by Joseph Caccavale's two daughters. Subsequently, at retrial on the damages issue, the jury awarded a total of $637,999.90 in damages. Both parties appealed. That proceeding is a nullity in light of our decision in this appeal, and therefore irrelevant.

We conclude that the judgment below must be reversed. The jury's answers to special questions stating that Raymark was negligent, but not in breach of warranty, were inconsistent as a matter of law. *Hayes* v. *Ariens Co.*, 391 Mass. 407, 410 (1984). "A defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true. A defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Id.* See n.3, *supra*. No theory of Massachusetts law reconciles the jury's inconsistent findings in this case. It is true that certain special circumstances in a case might permit a finding of negligence without a finding of a breach of warranty, but those circumstances are not present in this case. See *id.* at 413 (discussing negligent failure to give a post-sale warning).

The plaintiff argues that the defendant failed to object to jury instructions on which the inconsistent verdict was based.

We disagree. Raymark made its position sufficiently clear at trial to have preserved its right on appeal. Raymark told the judge that "the finding of negligence and the finding of no breach of warranty [are] . . . hopelessly inconsistent," and that "they can't have no breach of warranty and negligence." Raymark moved for a mistrial, in part because of the inconsistency in the jury's preliminary answers to the special questions, and renewed that motion when the jury returned with an inconsistent verdict. Defense counsel argued that "the jury's inconsistent answers indicate a fundamental misunderstanding of either negligence law or warranty law, or both." The jury instructions and the question of inconsistent verdicts were intermingled and interdependent. The defendant's position, reasonably clear in a long and confusing dialogue among judge, counsel, and jury, applied to the jury instructions on negligence and breach of warranty.[4]

We can only speculate as to the cause of the jury's confusion, but the inconsistent verdicts cannot stand. Although defense counsel should have more explicitly requested at the final stage that the jury be sent out for further deliberations because of the inconsistent verdicts, the record clearly shows that the defendant reiterated its position regarding the legal inconsistency of the verdicts during the continuing colloquy during the last few days of the trial. "Since the special verdicts with respect to whether the defendant was negligent and breached its warranty were inconsistent, further deliberations by the jury after appropriate instructions by the judge would have been appropriate." *Hayes, supra* at 414. Because the judge did not return the jury for further deliberations, with additional instruc-

---

[4] The dissenting opinion, *post* 99-100 (Liacos, J., dissenting), concludes that the judge's instructions to the jury on breach of warranty were too narrow and did not make clear that foreseeable users of the asbestos product could recover for breach of warranty if the product was unreasonably dangerous. We disagree. The judge properly instructed the jury, stating: "A product isn't defective if it's *safe* for its normal and foreseeable use . . . so long as it was *reasonably safe* for its intended purpose . . . (emphasis added). It is unrealistic to conclude that the jury, in evaluating this case, which deals strictly with personal injury, considered the safety issue in terms of fitness for wrapping pipes.

tions, he should have allowed Raymark's motion for a mistrial or its subsequent motion for a new trial on all issues.[5]

The judgment is reversed and the case is remanded to the Superior Court for a new trial on all issues.

*So ordered.*

LIACOS, J. (dissenting). I do not agree that the defendant is entitled to a new trial on liability. My reasons are twofold. First, the defendant failed to preserve its rights adequately because it did not make timely objection to the judge's charge. Second, the defendant has demonstrated no prejudice flowing from the allegedly inconsistent responses of the jury to the special questions put to them. Therefore, I dissent.

1. It is well established that, "[i]n determining whether there is an inconsistency in the jury's answers, the answers are to be viewed in the light of the attendant circumstances, including the pleadings, issues submitted, *and the judge's instructions*" (emphasis added). *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 (1987). In this case, considering the instructions actually given to the jury, the jury's verdict was not inconsistent.

Although the judge at some points gave a proper definition of breach of warranty, in his charge he gave also an unduly restrictive definition of the same concept. Most importantly, during the crucial clarification to the jury, the judge gave an unduly narrow definition of warranty liability. The judge instructed the jury to determine whether "the product [was] reasonably *fit for the purposes intended* or was it defective so that it was not reasonably *fit for the purposes intended*" (emphasis supplied). In *Hayes* v. *Ariens Co.*, 391 Mass. 407, 412-413 (1984), we stated that a warranty "include[s] the uses

---

[5] The parties also dispute the proper postjudgment interest rate to be applied to the damages for the decedent's pain and suffering, impaired earning capacity, and hospital bills. Because we order a new trial, we do not address this issue. See *MacCuish* v. *Volkswagenwerk A.G.*, 400 Mass. 1003 (1987), affirming 22 Mass. App. Ct. 380 (1986).

intended by the manufacturer and *those which are reasonably foreseeable*" (emphasis supplied). The judge's restrictive charge may have left the jury with the mistaken impression that, in order to show a breach of warranty, the plaintiff had to show that the product was not fit for the purpose for which it was sold. The judge's supplementary charge did not make it clear that people in the plaintiff's position, i.e., foreseeable users of the asbestos material, may recover under a warranty claim if the product sold was unreasonably dangerous. At the very least, the charge on warranty must be viewed as confusing to the jury.

When instructing the jury on warranty liability, the judge should have tracked more closely the language of Restatement (Second) of Torts § 402A (1965). See *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978); *Hayes* v. *Ariens Co.*, *supra*. "Recognizing that the seller is in the best position to ensure product safety, the law of strict liability imposes on the seller a duty to prevent the release of 'any product in a defective condition unreasonably dangerous to the user or consumer,' into the stream of commerce. Restatement (Second) of Torts § 402A (1) (1965). This duty is unknown in the law of negligence and it is not fulfilled even if the seller takes all reasonable measures to make his product safe. *The liability issue focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the user or the seller*" (emphasis supplied). *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983). *Hayes* v. *Ariens Co.*, *supra* at 413. The judge did not explain adequately these principles to the jury.

The judge erroneously instructed the jury as to the relationship between warranty liability and negligence liability. The judge strongly implied to the jury that they could find the defendant negligent without finding that the defendant had breached the warranty of merchantability. The judge stated, "Question 3 dealing with the breach of warranty doesn't depend at all on how you have dealt with Questions 1 [Negligence] and 2 [Causation] . . . . But Questions 1 and 2 dealing with negligence have nothing to do with whether or not there was a breach of warranty . . . ." The judge's supplementary instruc-

tion was highly misleading in light of the holding of *Hayes* v. *Ariens Co.*, *supra*. When a jury ask for a clarification regarding the relationship between negligence and warranty liability, the trial judge should explain that a "defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Hayes* v. *Ariens Co.*, *supra* at 410. As the court itself states, the judge did not do this but instead "instructed the jury that the breach of warranty question was independent of the negligence question, stating that they were two different theories of liability." *Ante* at 95.

However, the fact that such errors were made does not mean that the defendant is entitled to a new trial. Nowhere does the defendant argue that it made timely objection to this improper instruction.[1] The record does not show an objection to the charge on this point. Thus, the issue was not preserved for appeal.

2. Additionally, the defendant was not prejudiced by the judge's errors. See Mass. R. Civ. P. 61, 365 Mass. 829 (1974). The judge gave a correct instruction on the law of negligence.[2] The judge's erroneous instructions on warranty liability and on the relationship between warranty and negligence liability had no effect on the validity of the negligence charge or verdict. If anything, the defendant was benefited by the judge's charge on warranty liability, for, as the jury's actual verdict demonstrated, it was less likely that the defendant would be found liable given the judge's restrictive definition of the warranty of merchantability. In such circumstances, it hardly can be

---

[1] The court's reliance on the defendant's objection *after* the jury returned their responses, namely, "Raymark told the judge that 'the finding of negligence and the finding of no breach of warranty [are] . . . hopelessly inconsistent,' and that 'they can't have no breach of warranty and negligence,'" is misplaced. This objection clearly was *not* to the charge given but related only to the jury's answers.

[2] On appeal, the defendant does not challenge the validity of the judge's instructions on negligence. At most, the defendant claims that the judge should have reinstructed the jury on all of the law at issue, including the law of negligence. The defendant's requested additional instructions on negligence did not differ materially from the instructions which the judge had given previously.

argued that the defendant was prejudiced by the judge's errone-
ous charge. To require a new trial because of the jury's violation
of abstract legal principles, as to which they were never prop-
erly informed, seems to me to encourage parties to lie in wait
to see if they can salvage a lost cause on legal technicalities.
Where no viable challenge has been mounted to the finding
of negligence, I think it unconscionable to subject this plaintiff
to yet another trial.

The verdict on negligence should stand, and the judgment
should be affirmed.