DAVID HOPPING & others[1] vs. WHIRLAWAY, INC., &
another.[2]

No. 92-P-1551.

Essex. January 10, 1994. - July 29, 1994.

Present: KASS, PORADA, & GREENBERG, JJ.

*Negligence*, Sale of liquor, Tavern, Motor vehicle. *Alcoholic Liquors*, Sale
   to intoxicated person, Motor vehicle. *Proximate Cause. Practice, Civil*,
   New trial. *Evidence*, Expert opinion.

In an action alleging negligent serving of alcoholic beverages to a person
   who the defendant knew or should have known was intoxicated, the de-
   fendant's motion for judgment notwithstanding the verdict was properly
   denied where there was evidence from which the jury could conclude
   that the defendant reasonably could foresee, within the scope of the risk
   that a customer who consumed several alcoholic drinks at the defend-
   ant's bar over a three-hour period would remain intoxicated for several
   hours and would then drive causing injury. [124-125]
In the circumstances of a civil trial involving claims against two taverns
   for negligent service of alcoholic beverages to a person they knew or
   should have known was intoxicated, the jury's answers to special ques-
   tions, indicating that one tavern was negligent, but that the other tav-
   ern was not, could not be harmonized and a new trial was required.
   [125-127]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on February 23, 1989, and October 18, 1989,
respectively.

The cases were consolidated for trial and were tried before
*Peter F. Brady*, J., and a motion for a new trial was heard by
him.

*Stephen M.A. Woodworth* (*Peter E. Heppner* with him)
for Whirlaway, Inc.

*Theresa A. Bisenius* for David Hopping & another.

---

[1]Susan Hopping and Janice Loffredo.
[2]Henry J's, Inc.

*Michael Paris* for Janice Loffredo.

KASS, J. About an hour after the time (9:13 P.M., on July 17, 1988) that an automobile driven by Kevin Regan collided head-on with that of the plaintiffs, Regan registered a blood alcohol concentration of .19 or .20, well over the threshold of disabling intoxication. Regan, who died later that night of the injuries he suffered in the collision, had, during the preceding afternoon and evening, engaged in protracted ingestion of alcoholic beverages (variously root beer schnapps and beer or beer alone) at three venues: the Whirlaway lounge and Henry J's, both taverns, and alongside the swimming pool of a friend. David Hopping, who was driving the other vehicle, and Susan Hopping (his wife), and Janice Loffredo, who were passengers in that car, brought an action for damages against the proprietors of the two bars, Whirlaway, Inc., and Henry J's, Inc., founded on their negligent service of alcoholic drinks to someone they knew, or should have known, was intoxicated. There is no controversy that Regan's driving in the wrong lane caused the accident.

After denials of timely motions for directed verdicts, the jury returned verdicts on special questions against Whirlaway, Inc., in favor of David Hopping, Susan Hopping and Loffredo of $587,000, $25,000, and $200,000, respectively. As to Henry J's, the jury returned a finding that Henry J's had not been negligent. Thereafter, Whirlaway moved for judgment notwithstanding the verdict and for a new trial. Those motions were also denied, actions from which Whirlaway has appealed, as well as from the ensuing judgments.

We conclude, reading the evidence in a view most favorable to the plaintiffs, without weighing the evidence or assessing the credibility of witnesses,[3] that Whirlaway was not entitled to judgment notwithstanding the verdict. We do

---

[3]See Mass.R.Civ.P. 50, 365 Mass. 814 (1974); *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978) (directed verdict standard); *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 613 (1989); *Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 254 (1983); *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 751 (1993).

not think, however, that the verdicts for the defendant Henry J's but against the defendant Whirlaway add up, and we are persuaded that there needs to be a new trial.

For purposes of analysis, it is useful to summarize the facts in light of the standards referred to in the preceding paragraph for acting on a motion for judgment notwithstanding the verdict. During the afternoon and evening of July 17, 1988 (starting around 3:30 P.M., and finishing between 5:45 and 6:20 P.M.), Regan had gathered with friends to drink at the Whirlaway.[4] One of those drinking friends, Robert Caston, described Regan after a third round of drinks but before the fourth round — so Caston's testimony could have been understood — as "look[ing] like he had a few," "feeling pretty good," and "pretty happy-go-lucky." Between 5:45 and 6:20 P.M., Regan and his friends left the Whirlaway for the home of Scott Adie, another member of the drinking group, where Regan and Adie swam laps in a swimming pool. Each member of the group drank a can of beer supplied by Adie.

Gary Signor, another member of the group, drove to his home with Regan from Adie's place. There he loaned his car to Regan on the latter's promise to go straight home. This Regan did not do. Instead, he drove to Henry J's, another watering spot that he favored. Regan arrived between 7:30 and 8:30 P.M. at Henry J's, where he was observed ingesting another beer and buying for two acquaintances. One of those acquaintances, Patsy Moschetto, testified that Regan looked like "[h]e might have had a couple, but he wasn't cocked that he couldn't walk or nothing." Between 8:30 and 8:45 P.M., Regan surfaced at the Whirlaway again. There was no evidence that Regan was served or was drinking on this last visit to the Whirlaway, although he bought a beer for an acquaintance, Philip McAdam. The bartender testified that she did not consider Regan drunk at the time, although he had

---

[4]Testimony was conflicting as to precisely how much drink Regan consumed. One drinking companion thought it was four shots of schnapps; a second testified it was three shots and two beers; a third remembered only two beers, while the bartender testified to two shots and two beers.

"glossy eyes." In any event, she had not, she testified, served him.

The catastrophic accident occurred on Merrimack Street in Methuen, some twenty to twenty-five minutes after witnesses remembered Regan last leaving the Whirlaway.

In *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 331-332 n.9 (1982), the court identified eight elements of proof of dram shop (stretching that phrase to include bars and restaurants) liability. The plaintiff must prove that the negligent driver who was the immediate cause of injury: (1) was a customer of the defendant tavern; (2) was served intoxicating beverages; (3) while intoxicated; (4) in circumstances such that the server knew or reasonably should have known the customer was intoxicated; (5) the customer then operated a motor vehicle while intoxicated; (6) that operation was reasonably foreseeable by the defendant tavern; (7) a person of ordinary prudence, in the circumstances, would not have served the customer; and (8) the customer's driving caused an injury to the plaintiff that was within the scope of the risk.

1. *Judgment notwithstanding the verdict.* Regan's first sojourn at the Whirlaway on July 17, 1988, by a slender margin (but we do not weigh the evidence) succeeds in providing a basis for getting to a jury. Fitting the evidence to the decisive factors: Regan was a customer; he was served drinks; he was described by a witness as "looking like he had a few" and so it could be inferred he was intoxicated; if that witness thought Regan seemed to "be feeling pretty good," then it could be inferred (although Regan was described as walking and talking normally and not loud or vulgar, contrast *Cimino* v. *Milford Keg, Inc.*, 385 Mass. at 325, 328) that the bartender reasonably should have recognized Regan was intoxicated when she served him a beer thereafter.[5]

---

[5]The plaintiff's expert witness, a toxicologist, testified that someone of Regan's age, height, weight, and experience as a drinker would not have been likely to exhibit overt signs of intoxication after three shots of liquor and two beers or four shots of liquor.

Subsequently, Regan operated a motor vehicle. There is some difficulty about the causal chain at this point because the accident with the plaintiffs occurred three to three and a half hours after Regan ended his first visit at the Whirlaway and Regan had refilled with beer on two subsequent occasions. Reading the record in the light most favorable to the plaintiffs, however, there was evidence from a toxicologist called by the plaintiffs from which the jury might conclude that it would take in excess of four hours for Regan to metabolize the alcohol he had consumed at the Whirlaway between 3:30 and 5:45 or 6:20 P.M. A bartender might be expected reasonably to foresee that it was within the scope of the risk that a customer who was having as much to drink as Regan did during his first visit to the Whirlaway would do injury on the road before the drinks "burned off." See *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 294-295 (1988). Subject to those comparatively rare situations when a court is able to draw the outer limits, questions of proximate cause are in the province of the jury. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 794 (1987). There was no error in denial of the motion for judgment n.o.v.

2. *The motion for a new trial.* In response to special questions (see Mass.R.Civ.P. 49[a], 365 Mass. 813 [1974]), the jury found that Whirlaway had been negligent and that its negligence was the proximate cause of the injuries suffered by the plaintiffs, but that Henry J's had not been negligent. It is not possible to square the idea of an ostentatiously drunk Regan (see, e.g., *Cimino* v. *Milford Keg, Inc.*, 385 Mass. at 325, contrast *Kirby* v. *Le Disco, Inc.*, 34 Mass. App. Ct. 630, 632 [1993]) during his first stop at the Whirlaway with the jury's verdict in favor of Henry J's. The jury's findings that Henry J's had not been negligent necessarily required an underlying finding that Regan was not visibly intoxicated when he was served alcoholic beverage there. Yet the evidence was uncontroverted that Regan had continued to drink after he left the Whirlaway and before he turned up at Henry J's. If he had been visibly intoxicated when earlier served at the Whirlaway, he must have been

visibly intoxicated at Henry J's; that is, unless the jury based their findings on Regan's second stop at the Whirlaway.

There is no evidence that on that second stop Regan was served. He is described as buying a beer for McAdam, but no witness describes the serving of drink to him or Regan drinking. Cf. *Yakubowicz v. Paramount Pictures Corp.*, 404 Mass. 624, 632-633 (1989). There is affirmative evidence from the bartender that she did not serve Regan during the last stop at the Whirlaway. The jury were not required to believe the bartender's testimony, but their disbelief does not establish the opposite, viz., that Regan was served the second time around. See *Commonwealth v. Michaud*, 389 Mass. 491, 498 (1983); *Commonwealth v. Jones*, 9 Mass. App. Ct. 83, 90-91 (1980).

It follows, therefore, that the evidence permitted a finding of negligent serving only during the first visit and that, as we have observed, does not square with the finding as to Henry J's. When the answers of the jury to special questions cannot be harmonized and the jurors have been discharged, a new trial is required. *Solimene v. B. Grauel & Co., KG*, 399 Mass. at 801, and cases and authorities cited. *Caccavale v. Raymark Indus., Inc.*, 404 Mass. 93, 98-99 (1989). The inconsistency of the answers was called to the attention of the judge in the motion for a new trial. Compare *Bennett v. Eagle Brook Country Store, Inc.*, 408 Mass. 355 (1990). We have not been furnished a transcript of such proceedings as followed the return of the verdicts and, therefore, we do not know if Whirlaway's counsel, as he should have, asked the judge to have the jury harmonize their answers before they were discharged. We take it from the plaintiffs' silence on the point before the trial judge and on appeal and their engagement with Whirlaway on the question of inconsistency of the verdicts, both at the trial level and before us, that the basis for Whirlaway discussing the issue was properly preserved.

Our decision that Whirlaway is entitled to a new trial renders academic the other issues urged by Whirlaway on appeal. If the case is tried again, the plaintiffs ought not to be

permitted to put to their toxicologist witness hypothetical questions which ask him whether Regan would have been recognizably intoxicated at the first stop at the Whirlaway if he had shown difficulty walking unless evidence is received that Regan, in fact, had demonstrated difficulty in walking. No such evidence was produced in the trial we have reviewed. Nor should the expert be allowed to assume Regan had been drinking as early as 1 P.M. There was no evidence of that.

The denial of Whirlaway's motion for a new trial is reversed, and the motion for a new trial shall be allowed.

*So ordered.*