Cheryl Kirby *vs.* George Morales & another.[1]

No. 98-P-562.

Essex. June 6, 2000. - February 2, 2001.

Present: Jacobs, Beck, & Duffly, JJ.

*Evidence,* Cross-examination, Hearsay, Past recollection recorded, Deposition, Expert opinion. *Practice, Civil,* Deposition, Directed verdict, Instructions to jury, New trial. *Negligence,* Tavern, Sale of liquor, Motor vehicle. *Alcoholic Liquors,* Sale to intoxicated person, Motor vehicle.

At a trial of a civil action, deposition testimony of one defendant, proffered by the plaintiff to establish a second defendant's liability, was not admissible in evidence, where the deposition had been taken before the second defendant had been made a party to the action and without notice to that defendant. [789-790]

Where a deposed party in a civil action did not recollect, in a second deposition, the testimony he gave on a certain point at a first deposition and thus could not be cross-examined on the issue in the second deposition, his testimony at the first deposition could not be used probatively at trial. [790-791]

In a civil action, certain deposition testimony of a party, proffered to establish a defendant's liability, did not qualify for admissibility in evidence as past recollection recorded. [791-792]

At a civil trial, the judge properly limited the testimony of a toxicology expert on the probable state of a lounge patron's intoxication at the time he was involved in an automobile accident causing injuries to the plaintiff, where the assumed facts in the hypothetical question upon which the expert's opinion was based did not take into account evidence of the quantity of alcohol consumed by the patron after he had left the lounge. [792-793]

In a civil action, the judge correctly allowed the defendant tavern keeper's motion for a directed verdict, where there was no evidence that its employees had served excessive amounts of alcohol to the tortfeasor patron or that they had continued to serve the patron after he appeared to be intoxicated. [793-794]

At the trial of a civil action, the judge's admonishment in his charge to the jury that opening statements of counsel were not evidence was a sufficient response to the plaintiff's objection to defense counsel's opening statement. [794]

The judge in a civil action correctly denied the plaintiff's motion for a new trial. [795]

[1]Bowery Playboy Lounge of Salisbury, Inc.

CIVIL ACTION commenced in the Superior Court Department on January 6, 1994.

The case was tried before *Joseph A. Grasso, Jr.*, J., and a motion for a new trial was heard by him.

*Charles G. Devine, Jr.*, for the plaintiff.

*H. Charles Hambelton* for Bowery Playboy Lounge of Salisbury, Inc.

DUFFLY, J. The plaintiff, Cheryl Kirby, appeals from a judgment of the Superior Court entered in favor of the defendant Bowery Playboy Lounge of Salisbury, Inc. (Lounge), on its motion for a directed verdict, and from the denial of her motions for a mistrial and for a new trial. Kirby claims that evidence in her favor was erroneously excluded, that a curative instruction prompted by prejudicial opening remarks made by counsel for the Lounge was inadequate, and that the damage amount awarded by the jury against the defendant George Morales[2] was insufficient. We affirm the judgment and orders of the Superior Court.

Kirby brought this action against the Lounge on the theory that the Lounge was liable to her for injuries she suffered when George Morales, driving under the influence of alcohol, broadsided her car. Kirby claimed at the jury trial that Morales was a customer of the Lounge just prior to the accident, which occurred at about 8:00 P.M. on the evening of May 1, 1993, and that Morales, who had been drinking since late in the morning of that day, was visibly intoxicated when his party was served beer by a waitress of the Lounge.

The evidence would have warranted the jury in finding the following facts.[3] On the morning of May 1, 1993, Morales got in his car, a full case of beer in the trunk and a twelve-pack of beer on the seat beside him. Morales and his friend, Peter Zani, headed for Hampton Beach, New Hampshire, from Morales's home in Framingham. They finished the twelve-pack en route, Morales likely drinking fewer than six of the beers. Peter left

---

[2]Also known as Jorge Morales. Morales conceded liability during the trial. As to him, the trial continued on the issue of damages only. The jury assessed damages in the amount of $900,000. Morales has not appealed from the judgment against him or from the denial of his motion for a new trial and/or remittitur.

[3]The only evidence before the jury regarding events leading to the accident was that provided by Morales at his second deposition. We address, *infra*, the trial judge's limiting to impeachment purposes the use of a prior deposition.

Morales at some point before reaching Hampton Beach. Morales, who is five foot five inches tall, weighed 190 pounds at the time. He ate two hamburgers during the day but did not recall when. Morales continued to consume alcohol on his arrival at Hampton Beach, drinking, as far as he could recall, from one to two beers per hour depending on what else he was doing. He met up with various people during the day, sharing with them the beer he had in the trunk, and drinking beer and perhaps other liquor provided by his companions. When his case of beer had been consumed, his companions provided the funds and Morales purchased more beer. Morales also drank alcoholic beverages in different establishments along the beach, buying his own drinks until the last two establishments when rounds were purchased by others. It was nearly dark when he and his group, by then consisting of seven men and women, arrived at the Lounge, the only venue Morales was able to identify by name. There was evidence that two pitchers of beer were purchased by his companions and shared with the group. Morales recalls "drinking and drinking and drinking," but he was not asked to leave, and no one spoke to him about his behavior. The plaintiff did not introduce any testimony that Morales exhibited signs of intoxication while a patron at the Lounge.

The Lounge was the last establishment in which Morales recalls having consumed alcohol prior to the accident, but he was unable to testify that this was the last place he consumed alcohol, and could not recall whether he "went to another after that one," or whether he went to "any sports bars after [he] left the [Lounge]." Morales could not recall how long he remained in the Lounge, but recalls it was already getting dark on his arrival. After leaving the Lounge, Morales and "a couple of guys" went out to the parking lot where they stayed for a while talking and drinking some of the beer he still had in his car. He does not know how long he stayed in the parking lot, or how much he drank, or even whether he drank more than one beer. Morales was alone when he left the parking lot in his car. He had no recollection of events subsequent to leaving the Lounge parking lot, and his testimony regarding events while at the Lounge was equivocal, at best. Morales was the only witness providing evidence as to his actions while at the Lounge, and after parting ways with Peter Zani. Other than Zani, Morales could recall the name of none of his companions, all of whom

he had met that day.

Traveling through a stop sign and three red lights at a speed of approximately sixty miles per hour, Morales's car hit Kirby's broadside as she proceeded through the intersection on a green light. Kirby was seriously injured. Morales crawled out of the window of his car yelling and swearing. He had slurred speech, could not walk straight, and "smelled like a brewery." His blood alcohol content registered in excess of .20 when tested at the hospital following the accident.

*Deposition testimony.* Kirby claims that it was error for the trial judge not to admit, as substantive evidence of the Lounge's negligence, Morales's deposition testimony given before the Lounge was a party to the action.[4] Morales did not testify during the trial but gave two depositions prior to trial. Present at Morales's first deposition, conducted on April 20, 1994, were attorneys for Kirby and for Morales. Based on Morales's statement during this deposition — that the Lounge was the last establishment at which Morales was served alcohol — Kirby amended her complaint to add the Lounge as a defendant. On December 21, 1995, a second deposition of Morales was attended by attorneys for all three parties. Morales's testimony from this second deposition was admitted in evidence and is not challenged on appeal.[5]

Kirby argues that certain statements made by Morales at the

---

[4]The Lounge argues that Kirby failed adequately to preserve her claim that the first deposition ought to have been admitted substantively on the basis of two exceptions to the hearsay rule. Kirby opposed the Lounge's motion in limine, advancing at that time the argument that the deposition constituted "a prior recorded statement," and that the Lounge had sufficient opportunity to cross-examine Morales at his second deposition. The trial judge initially indicated that the testimony would come in substantively. However, during trial the judge ruled that the deposition would be admitted for the limited purpose of impeachment, and Kirby's counsel offered the testimony "as a prior inconsistent statement or as a prior recollection recorded." Finally, Kirby offered the transcript of the first deposition for identification "to make my record." In light of the record below, "[w]e consider the issue sufficiently preserved for appellate review." *Charles River Mort. Co.* v. *The Baptist Home of Mass., Inc.,* 36 Mass. App. Ct. 277, 280 n.2 (1994).

[5]During the trial, the trial judge's assumption that "Mr. Morales is unavailable" went unchallenged, "so that his deposition was admissible pursuant to [Mass.R.Civ.P. 32(a)(3), 365 Mass. 187 (1974),] if otherwise competent." *Frizzell* v. *Wes Pine Millwork, Inc.,* 4 Mass. App. Ct. 710, 711 n.1 (1976). Morales was then apparently living in Puerto Rico.

first deposition[6] should have been admitted under the prior recorded testimony exception to the hearsay rule, relying on *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986). We need not determine today whether deposition testimony bears the indicia of reliability accorded prior recorded testimony given in a court room proceeding, justifying admission of the testimony at a subsequent civil trial. Kirby's argument may be disposed of on other grounds: because the Lounge had no notice of the first deposition as it was not then a party, Morales's statements from this deposition could not be used against it. *Frizzell* v. *Wes Pine Millwork, Inc.*, 4 Mass. App. Ct. 710, 713 (1976). See *Commonwealth* v. *Canon*, 373 Mass. 494, 500-501 (1977), cert. denied, 435 U.S. 933 (1978).

Kirby contends that the Lounge's examination of Morales at the second deposition regarding statements he made at the first deposition gave the Lounge the requisite opportunity to cross-examine Morales contemplated by *Frizzell, supra.* Testifying at the second deposition, Morales did not recall having had a

---

[6]At his first deposition, Morales testified, inter alia, that, while he was at the Lounge, a "girl came over and said, '[y]ou guys are pretty much drunk already.' And we started talking to her and she said, 'All right. You guys can stay, then, but don't make — start acting stupid, like throwing some stuff, and you'll be able to stay.' "

Q. "After that point, did they bring you any more beers over."

A. "Yeah."

Q. "Can you describe this girl that came over and said that to you? Was she a waitress?"

A. "I don't know, because I was standing up to get the things myself. It was — all the girls were, like bringing stuff to the table, but she wasn't bringing nothing to the table that we was, because we were all walking and getting it ourselves, you know. So I can't say she was really my waitress at the table."

Q. "Okay. To your knowledge, was this woman somebody that worked. there?"

A. "She's got to be, yeah."

Q. "In other words, you saw her carrying drinks to other tables, and stuff like that?"

A. "Yeah."

Q. "Now, do you remember how much more you had to drink after she said that?"

A. "No."

Q. "Do you remember that you actually had at least another beer after she said that?"

A. "Yes."

conversation with someone, possibly a waitress, who commented on the level of his intoxication. See note 7, *infra*. In addition, when asked several times whether he remembered making this statement in his earlier deposition, Morales consistently responded that he could not.[7] "When [a] witness at trial has no recollection of the events to which the statement relates, th[e] requirement of an opportunity for meaningful cross-examination is not met." *Commonwealth* v. *Daye*, 393 Mass. 55, 73 (1984). The result is the same if a witness does not acknowledge having made an inconsistent statement during prior testimony, even if he recalls the event to which the statement relates. *Ibid.* & n.17.[8] The trial judge was correct to preclude probative use of the deposition testimony here at issue.

Kirby argues, alternatively, that the deposition statements should have been admitted as a past recollection recorded, citing Proposed Mass.R.Evid. 801(d)(1)(A), and *Commonwealth* v. *Dougherty*, 343 Mass. 299, 306 (1961). "Among the prerequisites of admissibility [under this exception to the hearsay rule] is the requirement that the witness, having firsthand knowledge of the facts recorded in the memorandum, be able to testify that the memorandum written or observed by him was true at the time it was made. . . . The memorandum must be 'shown to have been made or adopted by the witness *when the matter was fresh in his memory* and to reflect that knowledge correctly' (emphasis supplied)." *Commonwealth* v. *Bookman*, 386 Mass. 657, 663-664 (1982), quoting from Fed.R.Evid. 803(5).[9] Even were we to adopt the suggestion that deposition testimony quali-

---

[7] Asked if he recalled making the statement, Morales said, "No." Asked again, he answered, "No. Nobody say that, because that's — because the other girls that were with us that day, they weren't there. So, you know, they didn't — that girl didn't — nobody said that, that's what I want to say." Pressed, he again said, "But what I'm saying now is that I don't remember somebody saying that to me." Asked if he recalled having testified to having had the conversation, he stated, "I don't remember."

[8] We are mindful of the difficulty facing counsel when a witness feigns a lack of memory. See *Commonwealth* v. *Sineiro*, 432 Mass. 735, 740-745 (2000). There was no finding here that Morales falsely claimed a failure to recall a conversation with someone who might have been a waitress. We note, in any event, that, even if the first deposition had been admitted on this basis, Morales did not testify that the person who spoke to him had ever served him alcohol.

[9] Morales's testimony as to what he was told by a person at the Lounge whom he observed carrying drinks to another table, was double hearsay and not admissible unless qualifying as an admission of a party opponent or its

fies as a prior recorded recollection, we would not do so here. Morales's first deposition testimony was given nearly a year after the events in question. See *United States* v. *Orrico,* 599 F.2d 113, 116 (6th Cir. 1979) (statement given over a year after the deposit of the checks displayed "considerable hesitancy about details. It would be difficult to conclude that the events were 'fresh in her memory,' however flexible that standard may be"). Although in *Catania* v. *Emerson Cleaners, Inc.,* 362 Mass. 388, 389 (1972), a signed statement given by a witness eight months after an accident was held admissible, here there was no evidence or finding that Morales agreed that "his memory was better at the time he gave the statement than it was at the trial, and that his true recollection was recorded in the statement." *Id.* at 389-390.

*Expert witness testimony.* Kirby further alleges that the judge should not have limited the testimony of her expert toxicologist on the issue of Morales's probable state of apparent intoxication while a patron at the Lounge. Had Kirby's expert been allowed to testify, he would have offered the opinion that, based upon Morales's blood alcohol content at the time of the accident and the fact that shortly before the accident he was a patron at the Lounge where he drank continuously, Morales would have exhibited signs of drunkenness at the Lounge.

The judge is given broad discretion to determine whether to permit or exclude expert opinion testimony, and it is no abuse of discretion to refuse to permit expert testimony that is not "directly based upon either (a) adequate direct personal knowledge . . . of all the facts, . . . or (b) assumed facts stated to him adequately and accurately in a proper hypothetical question." *H.H. Hawkins & Sons Co.* v. *Robie,* 338 Mass. 61, 65 (1958). See *McGuiggan* v. *New England Tel. & Tel. Co.,* 398 Mass. 152, 162 n.10 (1986); *Hopping* v. *Whirlaway, Inc.,* 37 Mass. App. Ct. 121, 126-127 (1994). There was evidence that Morales continued to drink beer after leaving the Lounge. There is no indication that the expert was prepared to testify that, regardless of the quantity of alcohol consumed by Morales after

---

agent. See *Ruszcyk* v. *Secretary of Pub. Safety,* 401 Mass. 418, 420-423 (1988) ("an agent's out-of-court statements may be admitted against his principal only where the agent has actual authority to make the statement offered," and adopting Proposed Mass.R.Evid. 801[d][2][D]). Kirby failed to lay a foundation that the unknown woman who Morales stated spoke to him was an employee of the Lounge with actual authority to make the statement, and it would not have been admissible on this basis.

leaving the Lounge (whether in the parking lot or at another, unnamed establishment), his opinion as to the state of Morales's apparent intoxication while a customer of the Lounge would have been the same. Although the Supreme Judicial Court has recently determined that "circumstantial evidence, including expert testimony, would permit the jury to infer that [a defendant] probably appeared intoxicated at the time he was served," *Douillard* v. *LMR, Inc.*, 433 Mass. 162, 165 (2001), in that case the expert's opinion was supported by "direct evidence of [the defendant's] own reactions to alcohol to confirm that they are in fact comparable to the average drinker." *Id.* at 167. The court declined to address whether, based solely on the expert's testimony as to the amount of alcohol that must have been consumed, "the jury could infer apparent intoxication." *Id.* at 168 n.3. Here, the evidence was uncertain as to the time that elapsed between the accident and the last beer imbibed by Morales at the Lounge, and the amount of alcohol consumed by Morales during that unknown period. There was no evidence regarding Morales's own reactions to alcohol consumption in general. Based on the only direct evidence of his behavior at the Lounge, if credited, Morales was not then obviously intoxicated. There was evidence tending to suggest that Morales was not an average drinker: Morales testified that he had begun to drink alcohol at age sixteen or seventeen, that on an average night of socializing he might drink three to four beers, "[i]t all depends," and that at other times he would drink "probably two drinks an hour." We conclude that, in the absence of evidence of Morales's "own reactions to excessive consumption," *Douillard* v. *LMR, Inc.*, *supra* at 167, the expert's opinion testimony was properly excluded.

*The motion for a directed verdict.* To avoid a directed verdict, there must be some set of facts upon which the jury could draw a reasonable inference in favor of the plaintiff. *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976). A reasonable inference "must be based on 'probabilities rather than possibilities' and must not be the result of 'mere speculation and conjecture.' " *Burroughs* v. *Commonwealth*, 423 Mass. 874, 876 (1996), quoting from *Alholm* v. *Wareham*, 371 Mass. at 627.

A tavern keeper's "negligence lies in serving alcohol to a person who already is showing discernible signs of intoxication." *Vickowski* v. *Polish Am. Citizens Club of Deerfield, Inc.*, 422 Mass. 606, 610 (1996). See *Hopping* v. *Whirla-*

*way,` Inc.*, 37 Mass. App. Ct. at 124; *Makynen* v. *Mustakangas*, 39 Mass. App. Ct. 309, 314 (1995). Because there was no evidence that an employee of the Lounge served Morales excessive amounts of alcohol, or continued to serve Morales after he appeared to be intoxicated, we conclude that there was not sufficient evidence from which a rational jury could infer that the Lounge was aware of Morales's state of intoxication. The judge did not err in granting the Lounge's motion for a directed verdict.

*Prejudicial opening statement.* During his opening statement, counsel for the Lounge alluded to possible collusion between counsel for Kirby and Morales.[10] Kirby's objection was sustained, but her request for a curative instruction was denied. Prejudicial statements made in front of the jury should be counteracted, but the judge is accorded great latitude to determine whether a curative instruction should be made at the moment of impropriety, whether the matter should be addressed during the charge to the jury, or whether a mistrial should be declared, and the decision to declare a mistrial remains fully within the discretion of the trial judge. *Rolanti* v. *Boston Edison Corp.*, 33 Mass. App. Ct. 516, 529 (1992). Having earlier sustained an objection to the comment, the judge's charge to the jury, which contained the usual admonishment that they not treat as evidence statements in the opening, was a sufficient response to the comments complained of. There was no abuse of discretion.

For the first time on appeal, Kirby also claims that the prejudicial comments entitle her to a new trial on the issue of

---

[10]We set forth the relevant portion of that statement, and the judge's response:

DEFENDANT'S COUNSEL: "Now, there [are] two depositions in this case . . . . The first deposition, we weren't a party in the case at that time. We had no opportunity to be there. We didn't even know about it. . . . [The first deposition] testimony is remarkably different, also, than the second deposition . . . . We were at that deposition, and he tells a different story.

"But I think you may be struck with some of the testimony in the first deposition, which I think the evidence will indicate to you that there was something going on, they may have something going on between the former counsel and Mr. Morales' counsel where there was some testimony that I respectfully suggest to you —"

PLAINTIFF'S COUNSEL: "I would object, your Honor."

THE COURT: "I'm going to sustain the objection."

damages. Whether to allow the motion is discretionary to the trial judge, *Bartley* v. *Phillips*, 317 Mass. 35, 43 (1944), to whom the request for additur should have been directed in a motion for new trial filed pursuant to Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974). *Freeman* v. *Wood*, 379 Mass. 777, 786 (1980). *Proctor* v. *North Shore Community Arts Found.*, 47 Mass. App. Ct. 372, 376 (1999).

*Denial of motion for new trial.* Kirby claims that, on the basis of all of the claims of error, her motion for a new trial should have been granted. "Because we find no merit to each of the [plaintiff's] previous assignments of error, we reject [her] claim that their cumulative effect was prejudicial and warrants a new trial." *Commonwealth* v. *McAfee*, 430 Mass. 483, 496 (1999).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*