Billings, Thomas P., J.
After hearing, the Motions for Summary Judgment of defendants Anthony W. Allen, d/b/a River City Billiards (paper #31), Bres. Incorporated, d/b/a the Lasting Room (paper #35), and William Griffin, d/b/a the Boston Blues Club (paper #34) are DENIED. With respect to the collateral motions:
1. The plaintiffs motion to strike Allen’s motion for summary judgment (paper #32) and the similar motion to strike Griffin’s motion were WITHDRAWN prior to the hearing
2. Griffin’s motion to extend the time for filing his motion for summary judgment is ALLOWED.
3. Allen’s motion for leave to file a reply memorandum (#42) is ALLOWED, and I have considered the reply memorandum (and its incorporated motion to strike certain portions of the plaintiffs summary judgment opposition) in the disposition of the motion for summary judgment.

FACTS

The summary judgment record would permit a factfinder to conclude that on the night of January 20-21, 2001:
Daniel Ferland, age 21 and eight months, after a day of snowboarding arrived at Players (not a defendant) in Salem, New Hampshire at around 9:30 p.m., and consumed two beers;
From there, Ferland drove to River City Billiards, where he arrived around 10:15 to 10:30; consumed two beers; began to feel intoxicated; and then had one gin and tonic, all in about half an hour. While at River City, Ferland spent a period of about ten minutes slumped over, head in his hands, staring at the floor.
Ferland then walked to The Lasting Room, arriving between 11:15 and 11:45, stayed 20-25 minutes and had one beer. From there, Ferland rode in a friend’s car to the Boston Blues club, where he had a gin and tonic. He left when the club closed at 1:00 a.m. and got a ride back to his car.
Ferland was accompanied at Players and River City by friends and by a cousin, Matthew Butterworth. The group was buying rounds for one another. Butterworth estimated that he had eight drinks at Players and another twelve at River City, a combination of beer and mixed drinks. When asked how much Ferland had to drink, he stated, “Probably the same as me,” but was not sure. Ferland “was definitely under the influence . . . we all were.” No one in the group was refused service at any time. Butterworth left with his girlfriend, the group’s designated driver; Ferland stayed at River City.
Half an hour after his last drink, while driving himself home, Ferland collided with the plaintiff, a pedestrian, causing him serious injuries. Ferland left the scene and went home, where he called 911 and reported the accident. He was arrested at home, the arresting officer observing that he exuded a strong odor of alcohol, was unsteady on his feet, and failed the horizontal gaze nystagmus test. Ferland subsequently pleaded guilty to operating under the influence, leaving the scene of an accident with bodily injury, and speeding.
DISCUSSION
The plaintiff must prove, as to each defendant, that it served Ferland when it knew or reasonably should have known he was already intoxicated. E.g., Vickowski v. Polish American Citizens’ Club, 422 Mass. 606, 612 n.4 (1996). Also:
Evidence of apparent intoxication, or of elevated blood alcohol levels, at some later point in time does not, by itself, suffice to show that the patron’s intoxication was evident at the time the last drink was served. “Our reluctance to accept such evidence as sufficient stems from the uncertainties of the situation, including the possible delayed impact of the consumption of alcohol, and the unknown effect on a patron of the last drink served to him by a licensee.” From the mere fact of intoxication observed at some later time (e.g., at the accident scene), one could not tell what contribution the patron’s final drink had made toward that state of intoxication. Evidence of later intoxication has been admitted for purposes of bolstering other evidence concerning a patron’s condition at the time alcohol was served, but it is not sufficient by itself to establish apparent intoxication at the time that alcohol was served.
Douillard v. LMR, Inc., 433 Mass. 162, 165-66 (2001). However:
While our case law has identified apparent intoxication at the time of service as an element that must be proved on such a claim, nothing imposes on the *29 plaintiff any higher or special burden of proof with respect to this element and, as in any other case, the plaintiff may seek to prove that element by direct evidence, circumstantial evidence, or a combination of the two.
Id. at 165.
The summary judgment record contains sufficient circumstantial evidence — in particular, Ferland’s own description of his ten-minute episode of staring at the ground, head in hands — sufficient to warrant a finding that Ferland was visibly intoxicated at the time of his last service at River City. The negligence case against this defendant may be bolstered somewhat by the evidence of overservice of Butterworth, and of general inattention to its patrons’ condition. While arguably short of overwhelming, the evidence would warrant sending the case against River City to a jury.
The evidence against the Lasting Room and the Boston Blues Club is different in two respects: Ferland spent less time and was served less alcohol at each establishment than at River City, and there is no direct evidence of his affect at either. The evidence that he was visibly intoxicated at River City is, however, circumstantial evidence from which a factfinder could conclude he was probably visibly intoxicated a short time later, when he was served at the other two establishments. See Hopping v. Whirlaway, Inc., 37 Mass.App.Ct. 121, 125-26 (1994) (taking this analysis a step further, and granting a new trial on ground of inconsistent verdicts where jury found against the bar which served first, but in favor of the bar which served later).
I have reached the disposition of the summary judgment motions without considering the report of Dr. Sampson, or the documents concerning the prior and subsequent incidents involving River City. The admissibility of this evidence at trial will be, of course, a matter for the trial judge; for present purposes, I note only that:
1. The Sampson report appears to consist of a considerable amount of advocacy and not much toxicology, and to fall largely outside the realm of admissible opinion testimony from a scientific expert; and
2. The other documents do not appear, at least on the present record, to fall within any of the exceptions to the rule generally disfavoring evidence of prior (or subsequent) bad acts.[1]

ORDER

For the foregoing reasons:
1. The Motion for Summaiy Judgment of defendant Anthony W. Allen, d/b/a River City
Billiards (paper #31) is DENIED;
2. The Motion for Summaiy Judgment of defendant Bres. Incorporated, d/b/a the Lasting Room (paper #35) is DENIED;
3. The Motion for Summaiy Judgment of defendant William Griffin, d/b/a the Boston
Blues Club (paper #34) is DENIED.
4. The plaintiffs motion to strike Allen’s motion for summary judgment (paper #32) and the similar motion to strike Griffin’s motion were WITHDRAWN prior to the hearing.
5. Griffin’s motion to extend the time for filing his motion for summary judgment is
ALLOWED.
6. Allen’s motion for leave to file a reply memorandum (paper #42) is ALLOWED.

 Plaintiffs counsel suggested at argument they might be used to rebut evidence of a business custom of habit on River City’s part. No such evidence having been put forward in support of the summaiy judgment motion, there is no occasion to receive the documents on this ground.