ROBERT M. BAUDANZA *vs.* COMCAST OF MASSACHUSETTS I, INC.

Middlesex. April 9, 2009. - September 4, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Civil,* Additur, Amendment, Appeal, New trial, Instructions to jury. *Damages,* Conscious pain and suffering, Additur. *Judgment,* Amendment. *Negligence,* Motor vehicle. *Evidence,* Medical expenses, Expert opinion. *Practice, Civil,* Judicial discretion.

This court concluded that, as to motions for a new trial granted after this date, a defendant accepting an additur order issued by a judge pursuant to Mass. R. Civ. P. 59 (a), as well as a plaintiff accepting a remittitur order under the same rule, may not appeal from that order once judgment has entered. [625-629]

In a negligence action arising out of a motor vehicle accident, the trial court judge's decision to grant the plaintiff's motion for a new trial unless the defendant accepted an addition to the verdict in the plaintiff's favor did not constitute an abuse of discretion, where the premise underlying the judge's decision (i.e., that the jury only awarded damages for medical expenses and not for pain and suffering, despite the plaintiff's severe and uncontested injuries) was correct. [629-630]

In a negligence action arising out of a motor vehicle accident, the trial court judge acted within his discretion in excluding, after voir dire, the testimony of the defendant's expert witness concerning the plaintiff's blood alcohol content and its causative effect, where the opinion was too speculative to warrant admission. [631-633]

In a negligence action arising out of a motor vehicle accident, the judge did not abuse his discretion in instructing the jurors about the consequences of their answers to special verdict questions regarding the assignment of percentages of comparative negligence, even where the jury had not yet manifested any confusion regarding the issue. [633]

CIVIL ACTION commenced in the Superior Court Department on April 22, 2004.

The case was tried before *Kenneth J. Fishman,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen C. Pfaff* for the defendant.

*Robert W. Casby* (*G. Thomas Pauling* with him) for the plaintiff.

BOTSFORD, J. When a party accepts an order for addition or additur to a jury's award of damages issued by a judge pursuant to Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), may that party thereafter appeal from the order? We conclude that a party who accepts such an order, or an order for remittance or remittitur, may not thereafter bring such an appeal. Because the rule barring the appeal may not have been clear in the past, we consider the substantive arguments that the defendant, who accepted an order for additur in this case, raises in its appeal. Concluding that they lack merit, we affirm the judgment in favor of the plaintiff and the judge's additur order.

1. *Background.* On the morning of December 5, 2003, a service truck owned by the defendant, Comcast of Massachusetts I, Inc. (Comcast), and driven by its employee, Jason Gulinello, struck the driver's side of an automobile driven by the plaintiff, Robert M. Baudanza, in an intersection in Billerica. Baudanza was very seriously injured in the accident. In 2004, he brought a negligence action against Comcast and Gulinello in the Superior Court.[1] The case was tried before a jury in February, 2008. The contested issues at trial were whether Comcast's employee operated the truck negligently by driving at excessive speed and failing to see Baudanza's vehicle enter the intersection, and whether Baudanza operated his own vehicle negligently by entering the intersection without stopping.

In support of its theory that Baudanza himself had been negligent, Comcast sought to call an expert witness, Dr. Mervyn W. Perrine, to offer opinion testimony at trial concerning his calculation of Baudanza's blood alcohol content or concentration (BAC) — the percentage concentration of alcohol in a specified quantity of whole blood — at the time of the accident, and that the level of alcohol in Baudanza's blood was a contributing cause of the accident. Based on a voir dire examination of Perrine that was conducted immediately before the start of the trial, the judge excluded Perrine's testimony on the ground that the causation opinion being proffered was too speculative to warrant admission.

Uncontested evidence at trial established that, as a result of the accident, Baudanza suffered multiple fractured ribs, creating

---

[1]Baudanza voluntarily dismissed his claim against Gulinello after Comcast stipulated during trial that it was liable for Gulinello's actions.

a serious condition known as "flail chest"; a collapsed left lung; a subdural hematoma; fractured front teeth; a ruptured spleen and lacerated pancreas; and a ruptured diaphragm. His initial stay in the hospital lasted eighteen days, during which he underwent two surgeries. He later returned to the hospital for five days to treat an abscess resulting from surgery, and again to treat deep venous thrombosis resulting from loss of his spleen. Baudanza testified without contradiction that he was limited to two hours of sleep per night because he was required to sleep sitting up, and that he continued to have constant pain. Counsel for Comcast conceded that the injuries Baudanza suffered as a result of the accident were "horrific" and put Baudanza through "hell."[2] Baudanza incurred medical expenses in the amount of $193,278.93.

Baudanza's medical records, which were submitted to the jury, indicated that he was medicated for "probable alcohol withdrawal" on December 10, 2003, five days into his first hospital stay, after he became irritable and combative with hospital staff.[3] Another physician's note two days later, however, indicated that Baudanza "probably was *not* at risk" for alcohol withdrawal (emphasis in original). Baudanza was prescribed Narcan on the day of the accident, December 5, and again on December 17; Narcan is a medication that can be prescribed for excess alcohol consumption, among other reasons. No evidence was offered as to the reason Baudanza was given Narcan, and Comcast did not call an expert witness with respect to the extent or cause of Baudanza's injuries or potential alcohol withdrawal.

In his instructions to the jury, the judge included an instruction on comparative negligence and explained that, if the jury assigned a percentage share of negligence greater than fifty per cent to the plaintiff, he would not recover any damages. The judge also instructed that, if the jury found Comcast's employee negligent, they should calculate damage amounts for "medical expenses, permanent conditions, lost earning capacity, and pain and suffering past, present, and probable in the future," and "add up each of these four categories to arrive at the total award

[2] A review of the record indicates that this concession was more than justified by the evidence.

[3] Baudanza told a hospital psychiatrist that he drank four beers per day, while his girl friend indicated he drank at least six beers per day.

for the plaintiff." The verdict slip did not require the jury to indicate separately the figure calculated in each category.

The jury found that Comcast's driver was fifty per cent negligent; found that Baudanza was fifty per cent negligent; and granted a total damage award of $193,278.93 — the precise amount of the medical bills. Judgment entered for Baudanza in the amount of $96,639.47, plus interest and costs, the amount awarded by the jury reduced by Baudanza's percentage share of negligence. Baudanza moved for a new trial on damages, arguing that the jury had failed to award damages for pain and suffering, permanent loss of bodily function, and diminished earning capacity. The judge granted the motion in part and denied it in part. He interpreted the jury's damage award of $193,278.93 to have been intended solely for medical expenses, and reasoned that the jury had therefore declined to give any award for pain and suffering or for loss of bodily function or earning capacity. The judge then concluded that, while the jury's failure to award damages for permanent loss of bodily function or reduction in earning capacity was arguably reasonable, their decision to give no pain and suffering damages was not, given the plaintiff's severe and uncontested injuries. The judge found that damages for pain and suffering in the amount of $400,000 would have been reasonable and, pursuant to rule 59 (a), ordered a new trial unless Comcast accepted an addition to the verdict of $200,000. Comcast accepted the additur, and an amended judgment entered for Baudanza in the amount of $296,639.47, plus interest and costs. Thereafter, Comcast appealed from the judgment and the order conditionally allowing the motion for new trial on damages. We transferred the case to this court on our own motion.

2. *Discussion.* a. *Defendant's ability to appeal after accepting additur.* Baudanza argues that Comcast waived its right to appeal from the judge's grant of a new trial subject to additur when Comcast chose to accept the additur. Posttrial amendment of a judgment is governed by rule 59 (a), which provides in relevant part:

> "A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive. A new trial shall not be

granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court adjudges reasonable."

We have not yet had occasion to consider directly whether a defendant may accept an additur and then appeal from the amount of additur or the determination by a judge that the jury's award of damages was inadequate. In *Moran Travel Bur., Inc.* v. *Clair,* 12 Mass. App. Ct. 864 (1981), the Appeals Court held that a plaintiff, having accepted a remittitur on which the trial judge conditioned allowance of the defendant's new trial motion on damages, was precluded from appealing from the conditional remittitur order. *Id.* at 865, citing *Donovan* v. *Penn Shipping Co.,* 429 U.S. 648, 649-650 (1977), where the United States Supreme Court reaffirmed "[a] line of [Federal] decisions stretching back to 1889 [that] has firmly established that a plaintiff cannot appeal the propriety of a remittitur order to which he has agreed."[4] Comcast does not question the Appeals Court's holding but argues, without explanation, that the rule should be different for additur than remittitur. We disagree.

At least two rationales support the rule against appeal after accepting a modification to the judgment. First, additur and remittitur serve the beneficial goal of "securing substantial justice between the parties without the burdensome costs, delays and harassments of new trials." *Freeman* v. *Wood,* 379 Mass. 777,

[4]Under the common law, the same rule "appears to have been generally accepted, practically without exception," among the States. Annot., 16 A.L.R. 3d 1327, 1329 at § 2 (1967 & Supp. 2009), and cases cited. A number of States have established an exception to the rule against appeal after accepting additur or remittitur, where the party benefiting from the adjusted damage award nevertheless appeals from the judgment. In this circumstance, these States permit the party who had accepted the additur or remittitur to cross-appeal, revoking acceptance, on the theory that the revoking party has not received the benefit of his or her bargain to avoid further litigation. See, e.g., *Plesko* v. *Milwaukee,* 19 Wis. 2d 210, 220-221 (1963) (remittitur); Ariz. R. Civ. P. 59(I)(2) & State Bar Committee Note 3 (West 2001) (additur and remittitur); Miss. Code Ann. § 11-1-55 (LexisNexis 2002) (same). See generally Annot., *supra* at 1331-1332, at § 3(b). The issue of cross appeal is not presented by this case.

Several States have abolished by statute the common-law rule against appeal. See, e.g., La. Code Civ. Proc. Ann. art. 2083 (West 2009); Va. Code Ann. § 8.01-383.1 (LexisNexis 2007). Massachusetts has no such statute.

782 (1980), quoting *Fisch* v. *Manger*, 24 N.J. 66, 72 (1957). It would defeat that purpose to allow a party to accept a modification of the damage award and nevertheless continue litigation on the issue of damages. See *Lewis* v. *Wilson*, 151 U.S. 551, 555 (1894) ("A man may continue litigation, and stand on his rights, or he may waive some of his rights for the sake of terminating litigation . . ."). Second, courts have rejected efforts to secure such a judgment and then seek a better judgment on appeal; additur and remittitur are mechanisms by which parties may secure a judgment with a definite floor or ceiling on damages, without the risk and uncertainty of a new trial. See *Woodworth* v. *Chesbrough*, 244 U.S. 79, 82 (1917) (plaintiff may not "secure[] a judgment [by remittitur] and yet seek[] to retract the condition upon which it was obtained"); *Semrau* v. *Herrick*, 72 Conn. App. 327, 333-334 (2002) ("[T]he defendant's action [of accepting additur] may be seen as an attempt to fix the maximum amount for which she can be held liable while seeking to restore the original, lesser verdict. The defendant, however, cannot have it both ways").

No ground for distinguishing excessive from inadequate damages in this context appears in the text of rule 59 (a), and we are aware of no State that has adopted the inconsistent procedural rule for remittitur and additur urged by Comcast.[5] It is true that the United States Supreme Court has distinguished additur from remittitur orders for purposes of the Seventh Amendment to the United States Constitution. *Dimick* v. *Schiedt*, 293 U.S. 474 (1935). In that case, the Supreme Court held that additur was an unconstitutional deprivation of the right to a jury trial, because additur was not allowed by English common law when the Seventh Amendment was adopted; the Court distinguished remittitur largely because it had long been recognized in Federal courts, but also because of the Court's view that remittitur "merely lop[s] off an excrescence" from the jury verdict, while

---

[5]Other jurisdictions allowing both additur and remittitur uniformly treat them the same for purposes of appeal. See, e.g., *Semrau* v. *Herrick*, 72 Conn. App. 327, 333-334 (2002) (no appeal from additur or remittitur once accepted); *Dalton* v. *Herold*, 934 P.2d 649, 650 (Utah 1997) (same); Ariz. R. Civ. P. 59(I)(2) (cross appeal of additur or remittitur permitted only where other party appeals); La. Code Civ. Proc. Ann. art. 2083 (same); Miss. Code Ann. § 11-1-55 (LexisNexis 2002) (same); Va. Code Ann. § 8.01-383.1 (LexisNexis 2007) (permitting appeal from additur or remittitur accepted under protest); Wash. Rev. Code § 4.76.030 (2008) (same).

additur "is a bald addition." *Id.* at 482, 486. Interpreting the Massachusetts Constitution, we explicitly considered and rejected the rationale of the *Dimick* opinion, holding that "[t]here is no relevant analytic difference between remittitur and additur." *Freeman* v. *Wood*, 379 Mass. 777, 783 (1980) (additur constitutional under art. 15 of Massachusetts Declaration of Rights). Our *Freeman* decision contained at least an implicit suggestion that a defendant accepting an additur order may not appeal from the order. See *id.* at 782. We now hold that, as to motions for a new trial granted after the date of this decision, a defendant accepting an additur order pursuant to rule 59 (a), as well as a plaintiff accepting a remittitur order under the same rule, may not appeal from that order once judgment has entered.

Comcast argues, correctly, that if it had rejected the option of additur in the judge's conditional decision to grant a new trial on damages, it would not have been entitled to appeal from that decision at that time as of right, but instead would have been obliged to proceed with the new trial and to bring its appeal after completion of the new trial. See *Brooksbank* v. *Epstein*, 5 Mass. App. Ct. 377, 378-379 (1977). That constraint does not affect our analysis. As the Appeals Court explained:

> "An order granting a new trial pursuant to Mass. R. Civ. P. 59 is purely interlocutory and not a final judgment from which an appeal may be immediately entered in this court. . . . 'While many of the questions of law decided by this court on appellate review arise from interlocutory rulings or decisions of trial judges, it has long been our general "rule of practice established in the interests of justice" . . . that, absent special authorization, such interlocutory rulings or decisions cannot be presented piecemeal to this court for appellate review. They may be presented only as a part of the ultimate appellate review available on completion of proceedings in the trial court.' "

*Id.*, quoting *Giacobbe* v. *First Coolidge Corp.*, 367 Mass. 309, 312 (1975). When a judge grants a new trial on damages subject to an additur or remittitur order, the party conditionally subject to that order has three options: to accept the adjustment and put an end to the litigation on the relevant claim; to reject the adjustment and proceed with the new trial on damages, after which

the propriety of the conditional order for new trial may be raised on appeal; or to request that the judge report the question of the conditional order's propriety for interlocutory review, pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996).[6] We have confidence that trial judges will exercise their discretion to report such a question where appropriate.

As we stated at the outset, it may not have been clear before this decision that a party accepting an additur conditionally ordered by the judge is precluded from appealing from the judge's order. Accordingly, we proceed to consider the defendant's substantive arguments raised in this appeal.[7]

b. *Judge's decision to grant a new trial subject to additur.* Comcast claims the judge's conditional grant of a new trial was error because the premise underlying the judge's decision — that the jury only awarded damages for medical expenses and not for pain and suffering because the verdict of $193,278.93 was the precise amount of Baudanza's medical bills — was not correct and constituted an abuse of discretion. We disagree.

"An additur is appropriate where the judge concludes that the

[6]Rule 64 (a) of the Massachusetts Rules of Civil Procedure, as amended, 423 Mass. 1403 (1996), provides:

> "If the trial court is of opinion that an interlocutory finding or order made by it so affects the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court, it may report such matter, and may stay all further proceedings except such as are necessary to preserve the rights of the parties."

[7]Courts in other jurisdictions have held that a party accepting an additur or remittitur order may appeal from issues or claims that are separate or distinct from the subject of that order. See, e.g., *Civiello* v. *Owens-Corning Fiberglass Corp., Reinforced Cement Prods. Div.*, 208 Conn. 82, 90 (1988) (effect of remittitur on statutory interest award demands resolution on appeal). See also *Call Carl, Inc.* v. *BP Oil Corp.*, 554 F.2d 623, 626-627 (4th Cir.), cert. denied, 434 U.S. 923 (1977) (permitting appeal on antitrust count despite acceptance of remittitur on fraud and deceit count). Cf. *Alley* v. *Gubser Dev. Co.*, 785 F.2d 849, 856-857 (10th Cir.), cert. denied, 479 U.S. 961 (1986) (rejecting appeal on calculation of interest and attorney's fees, where trial judge ordered new trial "*on all issues*" subject to remittitur [emphasis in original]); *Lanier* v. *Sallas*, 777 F.2d 321, 325-326 (5th Cir. 1985) (acceptance of remittitur on compensatory damage count bars appeal on punitive damage count, where punitive damage count "is dependent on establishing liability for compensatory damages"). Because, for the reason stated in the text, we consider all the issues Comcast has raised in the present appeal, we do not address in this case the precise scope of issues waived by acceptance of an additur or remittitur.

verdict is sound except for the amount of damages and that the amount of damages is unreasonable." *Service Publs., Inc.* v. *Goverman,* 396 Mass. 567, 580 (1986). "[T]he allowance of a motion for a new trial based upon an inadequate or excessive award of damages, and the direction of an addition or remittitur, rests in the sound discretion of the judge." *Blake* v. *Commissioner of Correction,* 403 Mass. 764, 771 (1989), quoting *Loschi* v. *Massachusetts Port Auth.,* 361 Mass. 714, 715 (1972). "We do not substitute our judgment for that of the trial judge who saw the witnesses." *Blake* v. *Commissioner of Correction, supra.* In ordering an additur or remittitur, the judge is not obliged to make the smallest modification possible; rather, the judge has discretion "to bring the verdict anywhere within the range of verdicts supported by the evidence." *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 662 (1978).

Comcast did not contest the reasonableness of Baudanza's medical expenses before the jury; its focus was on the cause of the accident. Nevertheless, Comcast now argues at length that it is "[j]ust as plausible" that the jury arrived at their figure by reducing the medical expenses in relation to the amount attributable to the plaintiff's alcohol withdrawal, and then adding the same amount as compensation for pain and suffering. The judge rejected this argument, reasoning that "[a]lthough the hospital records reflect that the plaintiff was examined for alcohol dependency with withdrawal, alcohol addiction was ultimately ruled out" and that the argument "defies logic and commonsense." We have reviewed the plaintiff's hospital records and see no abuse of discretion in the judge's decision, given the precise match between the medical expenses and jury award, the extensive and painful injuries uncontestedly suffered by the plaintiff as a result of the accident, and the limited evidence of treatment for any unrelated condition.[8,9]

---

[8] Moreover, the general rule applicable to damages in personal injury cases is that "a wrongdoer is responsible for the combined effects of the harmful results of his wrongful act and a preexisting disease or condition." *Varelakis* v. *Etterman,* 4 Mass. App. Ct. 841, 841 (1976). See *McGrath* v. *G & P Thread Corp.,* 353 Mass. 60, 63 (1967); *Higgins* v. *Delta Elevator Serv. Corp.,* 45 Mass. App. Ct. 643, 649 & n.8 (1998). There is no indication that any treatment the plaintiff did receive related to alcohol dependency would have been necessary absent Comcast's negligence.

[9] Comcast relies on a decision by the Appellate Division of the District

c. *Exclusion of expert medical testimony.* Comcast next argues that the judge erred in excluding the testimony of its expert witness, Perrine. The proffered testimony was to the effect that (1) at the time of the accident, Baudanza had a BAC of .04; (2) drivers with this level of BAC suffered impairment with respect to "divided attention" capacity[10] and other psychomotor capabilities; and (3) Baudanza's alcohol-related impairment was a contributing cause of the accident.

"The decision to exclude expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or other error of law." *Palandjian* v. *Foster,* 446 Mass. 100, 104 (2006), citing *Commonwealth* v. *Pike,* 430 Mass. 317, 324 (1999). Similarly, abuse of discretion is the standard that applies to review of a trial judge's determination to exclude expert testimony on the ground that it does not meet the reliability standard required by *Commonwealth* v. *Lanigan,* 419 Mass. 15, 25 (1994), and its progeny. See *Palandjian* v. *Foster, supra.* We discern no abuse of discretion by the judge here.

Perrine, an experimental and social psychologist who focused on alcohol and the contribution of alcohol to personal injury, testified during a voir dire concerning a number of experiments that involved individuals with low BACs — that is, BACs of .10 or lower — who were driving or performing other types of

Court upholding a trial judge's denial of the plaintiff's motion for a new trial or for an additur for pain and suffering after the jury returned a verdict for the plaintiff in the amount of the plaintiff's medical expenses. See Roseme *vs.* Tolbert, District Court, Appellate Division, Northern District No. 9920 (Sept. 26, 2005) (judge's decision to deny additur not abuse of discretion; inference that jury did not award damages for pain and suffering was reasonable, but not inescapable, where medical bills and jury award were both $2,400). We agree that a judge might permissibly determine, in his discretion, that a jury *did* include both pain and suffering and reasonable medical expenses in their damage award even though the award and the medical bills happened to be the same amount. As we have discussed in the text, however, in this particular case the judge properly exercised his discretion to conclude that the jury did *not* make an award for pain and suffering. Neither determination constitutes an abuse of discretion.

[10]"Divided attention" was defined by Perrine as a "type of multitasking, that is to say, being able to perform on one task," such as steering, while "concurrently or intermittently concurrently" performing another, such as checking the side and rear view mirrors of the vehicle.

activities. Perrine, however, did not reveal in his testimony the number of such experimental studies (either overall or those concerned specifically with driving experiments),[11] the size of the cohort participating in any of them, or any specific explanation of what level of impairment a person with a .04 BAC — as opposed to persons within a range of BACs from .015 to .10 — might be expected to experience.[12]

Moreover, Perrine's opinion that Baudanza's BAC was a contributing cause of the accident was the result of a mathematical calculation (retrograde extrapolation) that he performed based on available information in the record as to Baudanza's weight, his drinking habits (he was a "heavy drinker" and, according to his girl friend, drank a six pack of beer a day), the time of the accident, and the time his blood was drawn thereafter at the hospital; there was no information available concerning Baudanza's actual, individual reaction to alcohol.[13] In addition, Perrine had no recollection of having provided expert opinion testimony about the alcohol-related impairment of a person with a BAC measuring

---

[11]Perrine testified that his curriculum vitae listed up to forty studies dealing with "low alcohol," but he did not indicate the number of experimental versus epidemiological studies. He offered no testimony concerning any epidemiological studies of the effects of low-level blood-alcohol content or concentration (BAC) on a person's driving performance. See United States Department of Transportation, Alcohol and Highway Safety 2001: A Review of the State of Knowledge c. 3 (2001) (whether impairment at BAC under .05 is associated with increased crash risk "cannot be stated in general terms on the basis of the findings of experimental studies alone, but awaits new evidence from epidemiologic studies").

[12]In this regard, it bears noting that under the Commonwealth's statute proscribing the operation of a motor vehicle while under the influence of intoxicating liquor or a controlled substance, G. L. c. 90, § 24, evidence indicating that a defendant's BAC at the time of an alleged offense was .05 or less creates "a permissible inference that such defendant was *not* under the influence of intoxicating liquor, and he shall be released from custody forthwith" (emphasis supplied). G. L. c. 90, § 24 (4) (e).

[13]Compare *Douillard* v. *LMR, Inc.*, 433 Mass. 162, 165-168 (2001), with *Kirby* v. *Morales*, 50 Mass. App. Ct. 786, 792-793 (2001) (dram shop cases raising issue of apparent intoxication of driver at time of being served alcohol; in *Douillard*, independent evidence of driver's reaction to alcohol supported admissibility of expert witness's proposed testimony, based on retrograde extrapolation, concerning driver's likely BAC and apparent intoxication while being served; in *Morales*, where no such evidence on driver's own reaction to alcohol was offered, trial judge acted within his discretion to exclude expert testimony on driver's apparent intoxication based on opinion of BAC).

as low as .04 in any court, because an accident in which a person who had been drinking and had registered such a low BAC would be rare. In the circumstances, and based on the record before him, it was well within the judge's discretion to exclude Perrine's testimony concerning the causative effect of Baudanza's BAC as speculative. See *Santos* v. *Chrysler Corp.*, 430 Mass. 198, 205-207 (1999).

d. *Jury instructions.* Comcast contends that the judge should not have instructed the jury that Baudanza would not be awarded any damages if they were to find him more than fifty per cent responsible for his injuries, because the jury had not submitted a question indicating that such an instruction was necessary to alleviate the jury's confusion concerning the special verdict questions. We disagree. "As a general proposition, whether to tell jurors about the consequences of assignment of percentages of comparative negligence is within the discretion of the trial judge." *Dilaveris* v. *W.T. Rich Co.*, 424 Mass. 9, 13 (1996), quoting *Mastaby* v. *Central Hosp., Inc.*, 34 Mass. App. Ct. 942, 943 (1993). While Comcast notes that instructions regarding the legal effect of answers to special verdicts may be given in response to a question from the jury to the judge,[14] a judge, "having in view the facts of the particular case, [and] any appeals therein to prejudice over reason," *Dilaveris* v. *W.T. Rich Co.*, *supra*, quoting *Thurston* v. *Ballou*, 23 Mass. App. Ct. 737, 742-743 (1987), may exercise discretion so to instruct the jury even where the jury have not yet manifested any confusion concerning the legal significance of answers to special verdict questions. See *Flood* v. *Southland Corp.*, 33 Mass. App. Ct. 287, 302 (1992), *S.C.*, 416 Mass. 62 (1993) ("the decision to instruct a jury in a comparative negligence case on the legal effects of their answers to special questions is within the sound discretion of the judge"). Cases from other jurisdictions are in accord.[15] We discern no abuse of discretion in this case.

---

[14]See *Dilaveris* v. *W.T. Rich Co.*, 424 Mass. 9, 13 (1996); *Thurston* v. *Ballou*, 23 Mass. App. Ct. 737, 742 (1987); *Kettinger* v. *Black & Decker Mfg. Co.*, 13 Mass. App. Ct. 993, 994-995 (1982).

[15]See, e.g., *Thomas* v. *Trustees of Salem Township*, 224 Kan. 539, 551-552 (1978) (not error for trial judge to inform jury of legal effect of their answers in comparative negligence case); *Dixon* v. *Stewart*, 658 P.2d 591, 596 (Utah 1982) ("if requested [by a party], a trial court must inform the jury of the

3. *Conclusion.* The judge's order granting the motion for a new trial subject to additur, and the underlying judgment, are affirmed.

*So ordered.*

---

effect of apportioning to the plaintiff 50% or more of the negligence it finds in a comparative negligence case, if the effect of such an instruction will not be to confuse or mislead the jury").