SUPERIOR COURT 
 
 CHARLES SHERMAN NEAL Plaintiff vs. CITY OF BOSTON Defendant

 
 Docket:
 16-2848-H
 
 
 Dates:
 January 18, 2022
 
 
 Present:
 Peter B. Krupp Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON THE PARTIES’ POST-TRIAL MOTIONS
 
 

             Charles Sherman Neal, a physical education teacher in the Boston Public Schools, brought two claims to a jury against the City of Boston (“the City”), both for violation of G.L. 151B. At the trial in late November and early December, 2021, the jury returned a split verdict. The jury found for the City on plaintiff’s race discrimination claim, but found for plaintiff on his retaliation claim. The jury awarded plaintiff compensatory damages of $436,500, and punitive damages of $950,000.
            The case is now before me on a number of post-trial motions filed under Superior Court Rule 9A: (1) the City’s Motion for New Trial and Remittitur Pursuant to Mass. R. Civ. P. 59 (Docket #130); (2) the City’s Motion for Judgment Notwithstanding the Verdict (Docket #132); (3) Plaintiff’s Motion for Statutory Attorneys’ Fees and Costs (Docket #138); and (4) Plaintiff’s Motion for Statutory Interest on Lost Wages (Docket #149).
I.          Motion for New Trial and Remittitur
            “[A] new trial should be granted only when ‘on a survey of the whole case it appears to the judge that otherwise a miscarriage of justice would result.’” Fitzpatrick v. Wendy’s Old Fashioned Hamburgers of New York, Inc., 487 Mass. 507, 51(2021), quoting Wojcicki v. 
 
                                                            -1-
 
Caragher, 447 Mass. 200, 216 (2006). See Mass. R. Civ. P. 59 (“A new trial may be granted . . . on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.”).
            The City seeks a new trial for four reasons. First, it argues that I abused my discretion in excluding testimony from Ms. Dickens, the white headmaster of plaintiff’s school, to the effect that she has an interracial family. The racial make-up on Ms. Dickens’ family was of no, or limited, relevance. The City would have had the jury infer that because Ms. Dickens has an interracial family, she could or would not have harbored discriminatory animus toward plaintiff, or could or would not have retaliated against plaintiff because he engaged in protected activity alleging race discrimination. One simply does not follow from the other.
            Nor was my ruling based on “antiquated and stereotypical thinking about the public’s perception of interracial families.” Defendant City of Boston’s Memorandum of Law in Support of the Motion for New Trial and Remittitur Pursuant to Mass. R. Civ. P. 59 at 10 (Docket #131). It would not matter if Ms. Dickens’ spouse were white, Black, or Hispanic, the race of Ms. Dickens’ spouse is not very probative, if probative at all; and was properly excluded under Rule 403. That is, any probative weight such evidence may have carried was, in my judgment, outweighed by the potential for undue prejudice, confusion of the issues, and misleading the jury. Mass. G. Evid. § 403.
            The City argues there was insufficient evidence to support any award of punitive damages. Punitive damages are available for a violation of G.L. c. 151B “for conduct that is outrageous, because of defendant’s evil motive or his reckless indifference to the rights of others.” Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 17a (1998). See Ciccarelli v. School Dept. of Lowell, 70 Mass. App. Ct. 787, 795-796 (2007) (and cases cited). There was
 
                                                            -2-
 
ample evidence from which the jury could have found the City’s actions outrageous and in reckless disregard of plaintiff’s rights. The jury could have found that Ms. Dickens’ actions were precipitated by plaintiff engaging in protected activity and were contrary to the satisfactory performance reviews plaintiff had received, including a review only a very short time before he was placed on administrative leave; the City did not adequately investigate issues surrounding plaintiff’s termination; and the City gave wholly pretextual reasons and shifting explanations for why plaintiff was placed on leave and effectively terminated. The jury also heard compelling evidence about how plaintiff was impacted by the way he was treated.
            The City argues that the amounts of the compensatory and punitive damages awards were excessive and require remittitur or the grant of a new trial. Remittitur is a procedure whereby a trial judge may subtract amounts from the damages awarded by a jury to secure substantial justice between the parties. See, e.g., G.L. c. 231, § 60F (“The court shall apply to each element of past and future damages . . . appropriate additurs or remittiturs.”); Mass. R. Civ. P. 59(a) (“A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive.”).
            Motions for remittitur or a new trial for an excessive award “ought not to be granted unless on a survey of the whole case it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result.” Moose v. Massachusetts Inst. of Tech., 43 Mass. App. Ct. 420, 427 (1997), quoting Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 292 (1993). A jury’s damages award must stand unless “the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice,” Labonte v. Hutchins & Wheeler, 424 Mass. 813, 824 (1997), quoting doCanto v. Ametek, Inc., 367 Mass.
 
                                                            -3-
 
776, 787 (1975), or “are ‘so great . . . that it may be reasonably presumed that the jury, in assessing them, did not exercise a sound discretion, but were influenced by passion, partiality, prejudice or corruption.’” Reckis v. Johnson & Johnson¸ 471 Mass. 272, 299 (2015), quoting Bartley v. Phillips, 317 Mass. 35, 41 (1944). When a jury’s award exceeds what is reasonable,
 remittitur serves “the beneficial goal of ‘securing substantial justice between the parties without the burdensome costs, delays and harassments of new trials.’” Baudanza v. Comcast of Massachusetts I, Inc., 454 Mass. 622, 626-627 (2009), quoting Freeman v. Wood, 379 Mass. 777, 782 (1980). See also Fernandes v. Attleboro Housing Auth., 470 Mass. 117, 130-131 (2014).
            Plaintiff’s damages were based on emotional distress. Emotional distress damages are “inherently difficult to prove with certainty, to rebut, and to evaluate.” Labonte, 424 Mass. at 825, quoting Keohane v. Stewart, 882 P.2d 1293, 1305 (Colo. 1994), cert. denied, 513 U.S. 1127 (1995). The jury heard extensive evidence about the number of complaints plaintiff made, the duration of his suspension and termination, and how he was affected by the way he was treated. The jury heard testimony about this from Mr. Neal and received corroborating medical records. I cannot say that the jury’s verdict was unsupported by the evidence, or that the damages awarded were outside the range of reasonableness. Of course, I am not privy to how the jury settled on its precise award. It is notable, however, that the jury, which was attentive throughout, took a reasonable amount of time for deliberations and returned a nuanced verdict, finding for the City on the discrimination claim and only finding for plaintiff on the claim of retaliation. Based on my memory of the evidence and after reviewing my notes, I cannot conclude that the amount of compensatory damages awarded by the jury is excessive, “[un]sound” or “unreasonable.” Baudanza, 454 Mass. at 630, quoting Service Publications, Inc. v. Goverman, 396 Mass. 567,
 
                                                            -4-
 
580 (1986). See also, e.g., Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992) (trial judge should only grant new trial if “verdict is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice”) (internal quotations and citation omitted); W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 748 (1993) (trial judge may set aside verdict “to avoid idiosyncratic choice brought on by arbitrary determination, capricious disposition, or whimsical thinking”).
            Similarly, I cannot say that the punitive damages award was excessive. Punitive damages are specifically designed to send a message and deter similar future conduct. Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 412 (2013), quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). There is no cap on a punitive damages award. Instead, a punitive damages award is reviewed based on an array of factors to determine if it “exceeds constitutional bounds.” Aleo, 466 Mass. at 414. These factors include “(1) ‘the degree of reprehensibility of the defendant’s conduct,’ (2) the ratio of the punitive award to the ‘actual harm inflicted,’ and (3) a comparison of ‘the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct.’” Id., quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575-576, 580-581, 583 (1996). To assess the reprehensibility of a defendant’s conduct, courts consider whether “the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.” State Farm, 538 U.S. at 419. As to the ratio between compensatory and punitive damages, the Supreme Court has recognized that “[s]ingle-digit multipliers are more likely to comport with
 
                                                            -5-
 
due process, while still achieving the State’s goals of deterrence and retribution, than awards with ratios in the range of 500 to 1.” Id. at 425. See, e.g., Aleo, 4665 Mass. at 417 (because punitive damages award with ratio to actual damages “of slightly less than seven to one . . . is within the single digit range, and the harm is primarily noneconomic, the award does not, on its face, appear grossly excessive in light of the accompanying compensatory damages”). 
            As in Aleo, here I cannot find that the jury’s punitive damages award was unreasonable or excessive. Plaintiff’s damages were principally non-economic. The City’s actions, as the jury could have found, were repeated, perpetrated by false explanations (not merely accidental), and evinced a reckless indifference to the impacts its actions would have on plaintiff. The jury also heard evidence that plaintiff was financially vulnerable. In this context, a punitive damages award less than 2¼ times the compensatory damages does not offend due process.
            Finally, the City seeks to set aside the prejudgment interest that the Clerk calculated at 12% per annum on the compensatory (emotional distress) damages under G.L. c. 231, § 6B, and added to the Judgment. In Brown v. Office of Commissioner of Probation, 475 Mass. 675 (2016), the Court held that sovereign immunity bars post-judgment interest from running on an award of punitive damages, costs and attorneys fees against a public employer for violation of G.L. c. 151B. The City argues that Brown repudiated the Court’s analysis in DeRoche v. Massachusetts Comm’n Against Discrimination, 447 Mass. 1 (2006), which held that prejudgment interest could be applied to a back pay award by the Massachusetts Commission Against Discrimination under G.L. c. 151B, § 5. Far from repudiating the analysis in DeRoche, 447 Mass. at 11-16, the Court in Brown recognized the holding in DeRoche, Brown, 475 Mass. at 677-678, which was premised on the statutory emphasis on full and fair compensation for victims of discrimination. In Brown, however, the Court found post-judgment interest to be
 
                                                            -6-
 
different, with a waiver of sovereign immunity only triggered by “‘uncommonly forceful language’ indicating a legislative intent that the Commonwealth should compensate plaintiffs without any loss whatsoever, including loss of the time value of the money awarded.” Id. at 679.
            Given the broad remedial purposes of G.L. c. 151B, § 9, I am confident that prejudgment interest may run generally on a compensatory damages award against a public employer for past emotional distress damages. See DeRoche, 447 Mass. at 13-15; Salvi v. Suffolk County  Sheriff’s Dept., 67 Mass. App. Ct. 596, 608 (2006) (Kafker, J.) (reinstating prejudgment interest on back pay and emotional distress awards for violation of G.L. c. 151B; “It is now settled law that sovereign immunity is no bar to the liability of a public sector employer for prejudgment interest on damages in a G.L. c. 151B discrimination case.”); Trustees of Health and Hospitals of the City of Boston, Inc. v. Massachusetts Comm’n Against Discrimination, 65 Mass. App. Ct. 329, 339 (2005) (“prejudgment interest can be awarded against the Commonwealth under G.L. c. 151B”), aff’d, 449 Mass. 675 (2007). Accord Brown, 475 Mass. at 678 n.8. In any event, I am
bound by this precedent. If this case involved only past emotional distress, this line of cases would end the inquiry.
            The problem for plaintiff is that another principle also applies: prejudgment interest may not be awarded on damages for injuries expected to occur in the future. Conway v. Electro
Switch Corp., 402 Mass. 385, 390 (1988). To apply prejudgment interest to an award of damages for future emotional distress would provide plaintiff with a windfall, even more confiscatory than an award of post-judgment interest, and not authorized by the limited waiver of sovereign immunity for prejudgment interest in certain contexts. DeRoche, 447 Mass. at 15.
 
                                                            -7-
 
            At trial, plaintiff argued that he would continue to suffer emotional distress into the future, and my instructions allowed the jury to so find.[1] To my memory, no party asked me to have the jury break out the damages by time period (e.g. damages for emotional distress suffered prior to filing suit, suffered prior to trial, or to be suffered in the future) and I did not ask the jury to provide such a breakdown.[2] Accordingly, I cannot say if the jury awarded damages only for a period prior to judgment for which prejudgment interest would be appropriate, or also for future emotional distress for which prejudgment would be inappropriate.
            In many contexts, the failure of a defendant to request a breakdown of past and future damages would be held against the defendant. See, e.g., McCarthy v. Ground Round, Inc., No. CIV.A. 94-2805, 1998 WL 726604, at *4 (Mass. Super. Oct. 15, 1998) (Gants, J.) (because employer did not ask for jury to itemize amounts for past and future emotional distress, interest calculated on entire emotional distress award under G.L. c. 151B). See also Brayman v. 99 West, Inc., 116 F. Supp. 2d 225, 236–237 (D. Mass. 2000) (Bowler, M.J.), aff'd, 26 F. App’x 24 (1st Cir. 2002), citing McCarthy, 1998 WL 726604, at **3-4 (“In order to prevent a potential windfall to the plaintiff under [G.L. c. 231, § 6B], it is incumbent upon the defendant to request an itemization of a compensatory damages award for future emotional distress. Defendant did not request an itemization of the compensatory damages. Accordingly, prejudgment interest shall
 
-------------------------------------
 
[1]The jury instructions provided on page 20: “Emotional distress includes any and all mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination or retaliation. In this case, you must consider the period from the date of the adverse employment action until the time when Mr. Neal will no longer experience emotional distress. Some factors that you should consider include, but are not limited to, the nature and type of the harm, the severity of the harm, the length of time that Mr. Neal has suffered and reasonably expects to suffer, and whether Mr. Neal has tried to reduce the harm (for instance by counseling or taking medication).” (Emphasis added). See also Id. at 23 (“Do not concern yourselves about interest. Interest may not be awarded by a jury.”).
 
            [2]To the best of my memory, no party objected to this portion of the verdict form.
 
                                                            -8-
 
be awarded on the entire $25,000 amount.” (Citations omitted)). But see Chiulli v. Newbury Fine
 
Dining, Inc., No. CIV.A. 10-10488-JLT, 2013 WL 5494723, at *4 (D. Mass. Sept. 30, 2013) (no
prejudgment interest under G.L. c. 231, § 6B on physical and mental pain and suffering damages because plaintiff did not object to verdict form; allowing prejudgment interest would risk plaintiff receiving windfall and defendants being penalized contrary to G.L. c. 231, § 6B; distinguishing Brayman).
            Here, however, the judgment is against a public employer. Issues of sovereign immunity implicate subject matter jurisdiction, which may be raised at any time and may not be waived. Therefore, I cannot count the City’s failure to request itemization of damages as waiving the sovereign immunity that protects the City against an award of prejudgment interest on future damages. Accordingly, I act in my discretion to reduce the interest award by 25% to account for the element of interest on future emotional distress. I find that 25% is reasonable given Mr. Neal’s testimony about the impact the City’s actions had on him. In this context, his testimony focused mostly on the period after he was placed on administrative leave and before he was reinstated. The prejudgment interest calculated on plaintiff’s compensatory damages shall be reduced to $205,934.58 (75% of the original prejudgment interest figure contained in the judgment). Otherwise, the City’s motion for a new trial and for remittitur must be denied.
II.        Motion for Judgment Notwithstanding the Verdict
            The City moves for judgment notwithstanding the verdict under Mass. R. Civ. P. 50(b), arguing that plaintiff’s evidence failed to demonstrate a causal nexus between his protected activity and the adverse employment action taken against him. This argument does not require extensive discussion.
 
                                                            -9-
 
            The City’s motion does not cite the standard to be applied under Rule 50(b). A motion for judgment notwithstanding the verdict under Mass. R. Civ. P. 50(b) requires the trial court to determine whether the prevailing party produced enough evidence to support the jury’s verdict. See Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 785-786 (1982). In making this evaluation, I must consider the evidence in the light most favorable to the plaintiff. Sullivan v. Brookline, 416 Mass. 825, 826 (1994). See Nemirovsky v. Daikin North America, LLC, Mass. 177 N.E.3d 901, 907 (2021), quoting O’Brien v. Pearson, 449 Mass. 377, 383 (2007) (“The verdict will stand if ‘anywhere in the evidence . . . any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].’”). “[A] judge has no right to set aside a verdict merely because he himself would have assessed the damages in a different amount.” Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 171 n.13 (1997), quoting Solimene v. B. Grauel & Co., K.G., 399 Mass. 790, 803 (1987).
            Rather than grapple with the standard under Rule 50(b), the City’s motion recites the evidence from the City’s perspective, seemingly drawing all inferences in the City’s favor. But the jury did not have to credit the City’s witnesses, including Ms. Dickens’ testimony. The evidence supported a very different narrative than the City’s version. The jury could have found based on the evidence that, shortly after filing a complaint with the MCAD and after filing grievances through the procedure approved by the Boston Public Schools (“BPS”), and notwithstanding his favorable performance reviews, BPS placed plaintiff on administrative leave without conducting a meaningful investigation; ordered plaintiff isolated from BPS’s facilities and its employees; required plaintiff to produce a psychiatric evaluation of his fitness to perform the duties of his job; and ultimately terminated him. Drawing all inferences in plaintiff’s favor,
 
                                                            -10-
 
the jury was well within bounds to find that the City’s decisions to take adverse employment actions against plaintiff were causally linked to his protected conduct.
III.       Plaintiff’s Motion for Statutory Fees and Costs
            Plaintiff moves to amend the judgment under Mass. R. Civ. P. 59 to add an award of statutory fees and costs for bringing this case under G.L. c. 151B, § 9. He seeks attorneys’ fees of $382,108.03. This figure is the sum of $309,365.25 for plaintiff’s two trial attorneys, who began representing plaintiff in late October 2020, more than four years after this case was filed; and $72,742.78 for his many prior attorneys. The fees plaintiff seeks are broken down in plaintiff’s submissions as follows:
 
 

 
 
 
 Role
 
 
 Attorney
 
 
 Dates
 
 
 Rate
 
 
 Total Fees
  
 
 
 
 
 Trial counsel
 
 
 Paul Nevins
 
 
 10/27/20 – 12/20/21
 
 
 $525/hr.
 
 
 $175,086.50
  
 
 
 
 
 “
 
 
 Ilir Kavaja
 
 
 10/27/20 – 12/17/21
 
 
 $400/hr.
 
 
 $110,540.00
  
 
 
 
 
 “
 
 
 Paul Nevins
 
 
 12/20/21 – 12/27/21
 
 
 $525/hr.
 
 
 $ 10,578.75[3]
  
 
 
 
 
 “
 
 
 Ilir Kavaja
 
 
 12/16/21 – 12/27/21
 
 
 $400/hr.
 
 
 $ 13,160.00[4]
  
 
 
 
 
 Prior counsel[5]
 
 
 Howard Fine
 
 
 11/2/15 – 9/8/16
 
 
 $350/hr.[6]
 
 
 $ 19,913.28
  
 
 
 
 
 “
 
 
 Richard Latimer
 
 
 11/14/18 – 6/26/19
 
 
 $350/hr.
 
 
 $ 9,413.50
  
 
 
 
 
 “
 
 
 Messing &
 
 
  
 
 
  
 
 
  
 
 
 
 
 Rudavsky
 
 
 12/16/15, 9/8/167
 
 
 N/A
 
 
 $
 
 
 1,966.00
  
 
 
 

 
-------------------------------------
 
[3]See Docket #137. Although the dates for Mr. Nevins’ two invoices overlap slightly, there does not appear to be any double-counting of the work performed.
 
[4]See Exhibit 2 to Docket #134. Although the dates for Mr. Kavaja’s two invoices overlap slightly, there does not appear to be any double-counting of the work performed.
 
[5]The dates for work by prior counel is taken from the bills and/or engagement agreements submitted by plaintiff as well as a review of the docket in this case. The amount of the total fees for each prior lawyer or law firm is taken from Mr. Neal’s affidavit. Mr. Neal has not indicated that he owes any of the prior lawyers anything more for their services.
 
            [6]For some of this period, it looks like Mr. Fine billed at $125/hr.
 
[7]Plaintiff has provided a copy of two checks to Messing Rudavsky totaling $1,066, but no itemized bills, and it does not appear that Messing Rudavsky entered an appearance in the case.
 
                                                            -11-
 

 
 
 
 “
 
 
 Upper Charles
 Law Group
 
 
  
 6/24/19 – 1/17/208
 
 
  
 N/A
 
 
  
 $ 7,000.00
  
 
 
 
 
 “
 
 
 Jeremy Weltman
 
 
 7/13/20 – 12/1/20
 
 
 $475/hr.
 
 
 $ 10,000.00
  
 
 
 
 
 “
 
 
 Stark & Heiner
 
 
 2/21/17 – 11//9/189
 
 
 N/A
 
 
 $ 4,400.00
  
 
 
 
 
 “
 
 
 Mark Stern
 
 
 Unknown
 
 
 N/A
 
 
 $ 600.00
  
 
 
 
 
 “
 
 
 Wendy Kaplan
 
 
 7/26/19 – 11/26/19
 
 
 $250/hr.
 
 
 $ 19,450.00
  
 
 
 

 
            Plaintiff also seeks an award of costs of $3,068.53 for filing and service fees, deposition costs, medical records, transcripts, and the like.10 The City does not object to these costs. 
            Under G.L. c. 151B, § 9, “[i]f the court finds for the petitioner it shall . . . award the petitioner reasonable attorney’s fees and costs unless special circumstances would render such an award unjust.” G.L. c. 151B, § 9, para. 3 (emphasis added). There is no question that plaintiff is the prevailing party in this case. In calculating a fee award in a case under G.L. c. 151B, courts use a “lodestar” method, “multiplying the number of hours reasonably spent on the case times a reasonable hourly rate,” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993), and then enhancing or reducing that figure based on case-specific factors. Plaintiff does not seek more than the fair hourly rate for his attorneys – given their respective years of experience – times the hours they spent on the case. The City concedes that it must pay plaintiff’s reasonable attorneys fees under G.L. c. 151B, § 9, but urges the court (i) to reduce the claimed hourly rates by attorneys Nevins
 
-----------------------------------
 
[8]Plaintiff has provided a copy of four checks to Upper Charles Law Group totaling $7,000, but no itemized bills, and it does not appear that Upper Charles Law Group entered an appearance in the case.
 
[9]The docket indicates that Michael James Heiner entered an appearance on May 11, 2017 and was allowed to withdraw on November 9, 2018. However, plaintiff has provided only a single check to Stark and Heiner dated February 15, 2017 for $900, and has not provided any itemized bills reflecting any work by Mr. Heiner.
 
[10]See Affidavit of Expenses Incurred, which is attached to plaintiff’s Affidavit of Attorney’s Fees Incurred (Docket #146) and describes $3,008.53 of costs; and Affidavit of Costs and Attorney’s Fees of Ilir Kavaja ¶ 3, which is attached as Exhibit 2 to Plaintiff’s Memorandum in Opposition to Defendant’s Motion for a New Trial and Remittitur (Docket #134) and describes an additional $60 of costs.
 
                                                            -12-
 
and Kavaja to $425 and $325, respectively, because they are in solo practices, (ii) to apply a 25% discount to the time for which they seek compensation, and (iii) to award nothing for the work of prior counsel. I address these issues in turn.
            Mr. Nevins is an attorney with almost 40 years of experience. He has extensive trial experience, including in the areas of employment and civil rights law, with considerable knowledge in the area of employment discrimination. His hourly rate for his practice in a small or solo firm environment of $525 is reasonable. Indeed, if he was practicing in a large firm, with a host of associates to manage, his hourly rate would likely be much higher.
            Mr. Kavaja is an attorney with approximately 10 years of experience. He started his firm in July 2021. He has tried in excess of 40 trials, most before juries; and focuses his practice on employment law matters. He, too, is in a small-firm practice. He has submitted affidavits from four other accomplished employment law litigators, who attest to the reasonableness of Mr. Kavaja’s hourly rate of $400. I find that his hourly rate is fair and reasonable in the employment law community for an attorney of his experience.
            The mere fact that Mr. Nevins and Mr. Kavaja are solo practitioners does not justify a further reduction in their rate. Part of what is built into their rates as solo practitioners is the fact that they will, on occasion, have to perform certain tasks that might otherwise be done by a more junior lawyer who bills at a lower rate. However, by performing those tasks themselves, they are saving time that might otherwise reasonably be spent for coordination, review and supervision of a team of people, or in doing tasks more expeditiously than they might be done by an attorney with less experience.
            The City also seeks to reduce the number of hours Mr. Nevins and Mr. Kavaja spent by 25% because of the conferences and other necessary efforts of coordination that were required to
 
                                                            -13-
 
represent Mr. Neal. This argument is slightly disingenuous from the City, which was represented by two attorneys at trial, had a third attorney of record who was heavily involved in pretrial matters, and employed a number of paralegals as support. Moreover, it is clear from having observed counsel’s performance at trial that each of plaintiff’s trial lawyers was integral to plaintiff’s prosecution of the case. Finally, to the extent there is concern about overbilling, Mr. Kavaja has reasonably reduced his bill to omit time for some office conferences with Mr. Nevins, for some paralegal-type functions he performed, and for work defending against the City’s various motions for sanctions. See Memorandum and Order on Various Motions to Strike and for Sanctions (Nov. 1, 2021) (Docket #109). I see no reasonable basis to cut Mr. Nevins and Mr. Kavaja’s bills by a quarter.
            Finally, the City objects to awarding anything as reimbursement for plaintiff’s prior counsel because no bills were submitted. In fact, bills have been submitted for at least some of plaintiff’s prior attorneys. And, obviously, those attorneys, and others, played an important role in prosecuting this case. The case was filed in September 2016, more than four years before Mr. Nevins and Mr. Kavaja appeared as trial counsel for plaintiff. During that period, attorneys for plaintiff prepared a complaint, litigated the City’s motion to dismiss, amended the complaint, engaged in discovery, litigated discovery motions, and opposed a motion for summary judgment.
            I have reviewed the hourly rates and bills reflecting work performed by attorneys Howard Fine, Wendy Kaplan, Richard Latimer, and Jeremy Weltman, as well as the docket for the periods when those attorneys were of record. The bills reflect reasonable time charges and rates that should be reimbursed by the City under a lodestar analysis. I do not have sufficient information in the record as to the work performed by the other lawyers and law firms to allow me to assess the reasonableness of the amounts Mr. Neal says he paid to them. See, supra, at 11-
 
                                                            -14-
 
12 nn. 7-9. Accordingly, I will allow only $58,776.7811 in attorney fees for the work done by lawyers before Mr. Nevins and Mr. Kavaja entered appearances.
IV.       Statutory Interest on Lost Wages
            Plaintiff moves to amend the judgment to add statutory interest on a back pay award granted by an arbitrator. While interest on back pay could have been awarded if the issue of back pay issue was decided by the jury, see, supra, at 6-7, the issue was decided by an arbitrator and was not before the court. The statute governing prejudgment interest authorizes the clerk to add interest on the amount of a damages award. Here, there was no back pay damages award in this case. Awarding interest thereon is therefore unlawful.
ORDER
            Defendant City of Boston’s Motion for New Trial and Remittitur Pursuant to Mass. R. Civ. P. 59 (Docket #130), is ALLOWED in part only insofar as the judgment shall be amended to reduce the interest on plaintiff’s award of compensatory damages from $274,579.45 to $205,934.58, but the motion is otherwise DENIED.
            Defendant City of Boston’s Motion for Judgment Notwithstanding the Verdict (Docket #132) is DENIED.
            Plaintiff’s Motion for Statutory Attorneys’ Fees and Costs (Docket #138) is ALLOWED in part insofar as the judgment shall be amended to include attorneys’ fees of $368,142.03, plus costs of $3,068.53, but the motion is otherwise DENIED.
            Plaintiff’s Motion for Statutory Interest on Lost Wages (Docket #149) is DENIED.
 
@/s/Peter B. Krupp Justice of the Superior Court
 
@January 18, 2022
 
-----------------------------------
 
[11]This figure is the sum of the amounts Mr. Neal paid to attorneys Howard Fine, Wendy Kaplan, Richard Latimer, and Jeremy Weltman.
 
                                                            -15