NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-29

TRUEDYNAMIC, LLC, & another[1]

vs.

TOP FLIGHT TECHNOLOGIES, INC. & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

These cross appeals are before us following a substantial judgment on the jury verdict entered in favor of the plaintiffs and the denial of the parties' postjudgment motions.  On appeal, plaintiff James Plunkett argues that the judge abused his discretion by denying his motion for a new trial on his Wage Act claim based on "irreconcilable inconsistencies" in the jury verdict and insufficient evidence that he was not an employee.[3] In its cross appeal, defendant Top Flight Technologies, Inc.

_____

[1] James Plunkett.

[2] Long Phan, John Polo, Nancy DeCicco, Samir Nayfeh, and Sanjay Sarma.  No individual defendant is part of this appeal.

[3] The plaintiffs labeled their postjudgment motion as one "for a directed verdict, a judgment notwithstanding the verdict [JNOV], a declaratory judgment, or in the alternative for a new trial." Plunkett limits his appellate arguments to the propriety of the denial of his motion for a new trial.  Plaintiff TrueDynamic, LLC has waived its appeal.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

(Top Flight) argues that the judge erred by denying its motion for remittitur or, in the alternative for a new trial, because (1) there was insufficient evidence to support the damage award, and (2) the prejudgment interest was calculated incorrectly.  We affirm the judgment, but remand for a recalculation of prejudgment interest.

   Background.  The jury could have found the following facts. See Doull v. Foster, 487 Mass. 1, 3 (2021).  Long Phan created Top Flight for the purpose of developing and commercializing a hybrid-propelled, unmanned aerial vehicle (UAV or drone).  In August 2014, Phan and his team (team) built the first successful UAV prototype.  The team used off-the-shelf carbon fiber parts and components in its prototype to minimize its weight.  Having demonstrated proof of concept with respect to the hybrid engine, the team moved to product development.  Top Flight began looking for vendors of the various parts of the UAVs (such as the airframe, propellers, and electronic system) in order to develop a product that could be demonstrated to potential customers and investors and eventually manufactured.

   James Plunkett, a friend of a Top Flight team member, owned and operated TrueDynamic, LLC (TrueDynamic), an established business that designs and fabricates carbon fiber components and products.  After introductions, Plunkett agreed to fabricate a small amount of carbon fiber parts to be integrated into the

next UAV iteration.  Top Flight was happy with the parts delivered by Plunkett leading to the expansion of the scope of their relationship; work began on a written contract.  From Phan's perspective, TrueDynamic was a vendor.

Because Top Flight was short on cash, Plunkett agreed to deferred compensation and to accept equity in Top Flight in exchange for goods and services.[4]  In March 2015, Plunkett advised Top Flight that he had been "working with a couple of attorneys" to come up with a compensation package in stock "that w[ould] avoid some huge pitfalls such as . . . [tax] laws." Plunkett suggested that they "recast" their relationship "as a service provider agreement to ensure primarily that [he was] not in any way employed by [Top Flight], to incidentally minimize other taxes."  Based on advice he had received, Plunkett provided a detailed write-up of how the agreement should be structured.[5]  As drafts of the proposed agreement were exchanged, Plunkett objected to being listed as an employee.

_____

[4] Plunkett indicated that while he could "devote the majority of [his] company's bandwidth to Top Flight," he would need to "keep other product development and customer projects proceeding."
[5] Plunkett proposed that TrueDynamic receive a portion of its compensation as "rent" for the use of its advanced composites shop and a portion for "providing services related and/or incidental to the work performed in TrueDynamic's line of business" (emphasis added).  He recommended structuring their agreement as a "corp-to-corp arrangement."

3

In June 2015, Top Flight and TrueDynamic entered into an agreement entitled "Top Flight Technologies, Inc. Services Agreement" (service agreement), with an effective date of September 17, 2014.  In the first paragraph, the parties described their relationship as a "Consulting Agreement," and labeled Plunkett "Vendor."  Section four of the service agreement stated that Plunkett was "providing services, equipment, and facilities to [Top Flight] on a largely deferred compensation basis until the Invoicing Event."[6]  That section further provided that compensation would take three forms to be specified on one or more "Work Orders":  payment for services, rent for equipment and the shop facilities, and reimbursement for out-of-pocket costs.  The compensation provision further required Top Flight to report to the Internal Revenue Service all of Plunkett's "Pay for Services" as "Nonemployee Compensation."[7]  The parties expressly agreed that they were "independent contractors to one another, and [that] nothing [in the service agreement] shall be deemed to cause . . . [the]

_____

[6] The Invoicing Event was defined as the first one to occur of five events, including, as herein relevant, Top Flight's closing of a Series A funding of at least $1 million.
[7] In fact, Top Flight subsequently reported $32,009.48 paid to TrueDynamic in 2015 as nonemployee compensation.

4

creat[ion] [of] an employment relationship . . . between the parties."[8]

On June 5, 2015, Top Flight approved TrueDynamic's "Work Order No. 2."[9] The parties' relationship frayed over Phan's view that TrueDynamic was unable to timely complete work. Upon Top Flight's execution of a receipt and acceptance form in July 2015, Plunkett allowed it to retrieve materials from TrueDynamic's shop.

In November 2015, a Series A financing exceeding $1 million closed, triggering an invoicing event under the service agreement. By invoice dated November 30, 2015, TrueDynamic requested payment for services, rent, and interest due under the service agreement. In December 2015, Top Flight refused to make payment on the ground that TrueDynamic failed to timely complete Work Order No. 2. This Superior Court action eventually ensued.

---

[8] Plunkett added the words "employment relationship" to this provision in order to exclude any agreement that he was an employee. Moreover, section 10.8 of the service agreement provided that "[t]he terms of this Agreement are not a contract or assurance regarding subsequent compensation -- or benefit of any kind to Vendor." In his redline of a draft of the agreement, Plunkett deleted the words "continued employment" from this provision because "there [was] never any employment."
[9] Work Order No. 2 superseded the in-process first work order and required the Vendor to provide "project management, design, engineering, testing, . . . Advanced Composite Fabrication, and Support services [necessary] to complete two (2) 1.8 [kilowatt] UAV . . . [and spare kits] [by] June 2015 with assistance by [Top Flight] personnel."

The case was tried over the course of several days in March and April of 2022.  Answering special questions on the competing contract claims, a jury found that Top Flight breached the service agreement, and awarded damages of $529,051.23.[10]  On Plunkett's Wage Act claim, the jury found that Plunkett performed services for Top Flight, but that he was not an employee.  Ruling on the parties' postjudgment motions, the trial judge concluded that there were "multiple avenues/options/calculations" for calculating damages pursuant to the service agreement, and he rejected Top Flight's claim that the damage calculation was against the weight of the evidence.  The judge further concluded that the service agreement was not an employment agreement, and that Plunkett's argument that he was an employee failed "as a matter of law and fact."

Discussion.  1.  Plunkett's appeal.  Plunkett argues that the jury erred by failing to grant him a new trial based on "irreconcilable inconsistencies" in the jury's answers to special questions.[11]

_____

[10] The jury further found that Top Flight breached the implied covenant of good faith and faith dealing.  The jury did not award any separate damages in connection with that count.  No challenge to these findings has been raised in these cross appeals.

[11] Responding to special questions one, three, thirteen, and fourteen, the jury found a breach of the service agreement by Top Flight and no breach by the plaintiffs; Plunkett provided

6

Plunkett did not properly preserve the issue for review. Although Plunkett's attorney informed the judge that that he would be filing posttrial motions, he did not object to the "inconsistency" before the jury were released, thereby waiving any claim of error.[12]  See Adams v. United States Steel Corp., 24 Mass. App. Ct. 102, 104 (1987).  In any event, the answers may readily be harmonized:  the jury could have determined that Plunkett provided the services required by the parties' agreement as an independent contractor, but Top Flight refused to pay for them.

The crux of Plunkett's argument here is that the evidence was insufficient to allow the jury to find he was not an employee, and that a new trial is therefore required to avoid a miscarriage of justice.[13]  We discern no abuse of discretion in the denial of his motion for a new trial.

---

services for Top Flight; and Plunkett was not an employee of Top Flight.

[12] We also note that Plunkett's attorney did not bring any alleged "inconsistency" to the judge's attention in the postjudgment motion.

[13] A judge should not set aside a jury verdict unless "the verdict is so greatly against the weight of the evidence as to induce in his [or her] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice" (quotation and citation omitted).  DaPrato v. Massachusetts Water Resources Auth., 482 Mass. 375, 377 n.2 (2019).  Our review of the ruling is for abuse of discretion.  Id.

An individual who performs services for another is presumptively an employee for purposes of our wage laws unless the purported employer can satisfy the familiar, three-part ABC test.  See G. L. c. 149, § 148B (a) (1)-(3); Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321, 327 (2015).  Plunkett adequately challenges only Top Flight's satisfaction of the second prong of the statute, i.e., "the service[s] [were] performed outside the usual course of the business of the employer."  G. L. c. 149, § 148B (a) (2).  "No single test controls this inquiry, so we consider several factors."  Carey v. Gatehouse Media Mass. I, Inc., 92 Mass. App. Ct. 801, 805 (2018).  Relevant factors include "a purported employer's own definition of its business."  Sebago, supra at 333.  A second factor is "whether the service the individual is performing is necessary to the business of the employing unit or merely incidental" (citation omitted).  Id.  As Plunkett acknowledges, the judge properly instructed the jury on these principles of law.

Here, Top Flight held itself out to the public as "an innovative provider of extended flight, enhanced payload, hybrid-propulsion commercial UAVs . . . hardware[,] and autopilot controls."  Carbon fiber part design and production has never been part of Top Flight's business of creating drones. In fact, Top Flight lacked the specialized equipment and space

8

needed to make the carbon fiber parts.  Contrast Weiss v.

Loomis, Sayles & Co., 97 Mass. App. Ct. 1, 8-9 (2020) (second

prong satisfied where putative employer kept large inhouse

technology group as part of normal operations, but staffed it on

regular and continuous basis with significant numbers of

independent contractors).

To the extent that Plunkett now claims he built Top

Flight's prototypes and that his services "align[ed] with and

became indistinguishable from Top Flight's self-described core

business function," these statements regarding the nature of his

business are at odds with earlier descriptions of TrueDynamic.[14]

The jury could have found that Plunkett's role was much more

limited, viz., producing carbon fiber parts and components for

incorporation into Top Flight's second and third UAV iterations

as a vendor, and providing design and testing services to make

sure the parts worked successfully with Top Flight's vehicle

designs and the rest of the component parts.  In short, the

evidence supported the jury's conclusion that Plunkett's

---

[14] For example, during negotiations over the service agreement, Plunkett indicated he was "in the biz of providing carbon parts," and he described TrueDynamic's "line of business" to include "advanced composites product, component, and process design, engineering, testing, project management, fabrication, manufacture, maintenance, and repair."  In the services agreement, the parties referred to TrueDynamic as "a preferred resource of carbon fiber components that can be used for [Top Flight] products."

services were performed outside the usual course of Top Flight's business.[15]

2.  Top Flight's cross appeal.  The jury awarded to the plaintiffs $529,051.23 in damages for the breach of the service agreement.  To that amount, prejudgment interest of $276,577.93 -- calculated at the statutory rate -- was added for a total judgment of $805,909.16 entered against Top Flight.  On appeal, Top Flight first argues that the jury's damage award exceeded the maximum amount allowed under the service agreement.  We are not persuaded.

At trial, Plunkett advocated for a theory of damages based on the value of the Top Flight shares TrueDynamic could have received but for Top Flight's breach pursuant to section four of the service agreement.  Top Flight's chief operating officer and treasurer, John Polo, testified that before the Series A financing closed in November 2015, he remembered signing a statement disclosing to the investors all liabilities; and that he listed the service agreement as a contingent liability.  Polo

---

[15] In finding that Plunkett was not an employee of Top Flight, the jury could well have been influenced by the evidence that it was Plunkett's idea not to be classified as one.  Regarding Top Flight's "business-to-business" defense, the judge did not rely on lack of standing to deny Plunkett's motion for a new trial. See Weiss, 97 Mass. App. Ct. at 6-7.  Because we conclude that the judge properly rejected the basis for the motion (i.e., that Plunkett was an employee of Top Flight), there is no need for us to reach this alternative ground for the ruling.

further testified that he disclosed TrueDynamic's right to elect to receive, pursuant to the service agreement, up to 50,399 shares of common stock in Top Flight upon the occurrence of an invoicing event.  In addition, Polo, a member of the board of directors, signed a corporate "consent" placing a value on the stock at ten dollars per share.[16]  In light of this evidence, the jury's damage award cannot be said to "lack[] an evidentiary foundation."[17]  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 483 (1991).  We discern no abuse of discretion in the

---

[16] To the extent that Top Flight challenges the adequacy of the evidence of valuation, it failed to explain why the board of directors -- subjected as it was to a due diligence investigation by investors -- was not qualified to place a value on the company stock; it also failed to direct us to any legal authority requiring expert opinion evidence on the subject. Contrary to Top Flight's argument, Polo's testimony can be read to confirm that once he was shown the corporate consent form with the ten dollars per share valuation to refresh his recollection, he remembered signing it as part of the closing documents, and was thus able to testify from present memory. There was no objection to this procedure, and in any event, no error.  See Commonwealth v. Hoffer, 375 Mass. 369, 376 (1978) (transcript "furnishe[d] no basis for concluding . . . [witness] was not testifying from present memory").  See also Commonwealth v. Bookman, 386 Mass. 657, 662 n.8 (1982) ("permissible evidence [in this procedure] . . . is the revived testimony of the witness").

[17] As Plunkett points out, there does not seem to be much "mystery" to the damage award as Top Flight claims.  The 50,399 shares valued at ten dollars per share he should have received under the contract were worth $503,990.  The addition of the five-percent contract interest rate would bring the total to $529,189.50.  See K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 351 (2023) (damage award must stand unless "it was clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be" [quotations and citation omitted]).

11

denial of Top Flight's postjudgment motion to the extent it was based on an excessive damage award.  See Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 630 (2009).

The prejudgment interest award stands on a different footing.  Under Massachusetts law, a party prevailing on a contract claim is entitled to prejudgment interest at the statutory rate or "at the contract rate, if established."  G. L. c. 231, § 6C.  Here, the service agreement provided for five percent simple interest per year on all base deferred compensation "until the Invoicing Event."  The contract rate was thus established, and by implied agreement, continued after that date "until the money is paid or the debt is merged in a judgment."  Roberts v. Grise, 387 Mass. 1004, 1004 (1982).  The clerk should have calculated and added interest to the judgment at the five percent contract rate rather than the twelve percent statutory one.[18]

Conclusion.  We vacate the portion of the judgment on the jury verdict awarding prejudgment interest of $276,577.93, and

---

[18] A case could be made that given the limited evidence of damages and the jury instructions in this case, the jury likely included five percent interest in their single damage award. Plunkett acknowledges as much in his reply brief.  If that were the case, the plaintiffs may not have been entitled to a second award of prejudgment interest calculated by the clerk.  However, Top Flight has neither raised this argument in its brief nor asked for relief from a double interest award, and therefore, we do not consider the issue further.

remand for recalculation at the contract rate of interest.  In all other respects, the judgment is affirmed.  The order entered June 15, 2022, denying Top Flight's motion for remittitur, or, in the alternative for a new trial, and denying the plaintiffs' postjudgment motion, is affirmed.

<u>So ordered</u>.

By the Court (Meade, Singh & Smyth, JJ.[19]),

Assistant Clerk

Entered:  January 25, 2024.

---

[19] The panelists are listed in order of seniority.